[No. 83660-4. En Banc.]
Argued June 16, 2011. Decided June 14, 2012.

TIMOTHY L. JACKOWSKI ET AL., *Respondents*, v. DAVID BORCHELT
ET AL., *Petitioners*, HIMLIE REALTY, INC., ET AL., *Respondents*.

722

*Jeffrey P. Downer* and *Erin J. Varriano* (of *Lee Smart PS*); and *Robert W. Johnson* and *Kristin L. French* (of *Robert W. Johnson PLLC*), for petitioners.

*Jon E. Cushman, Benjamin D. Cushman,* and *Stephanie M.R. Bird* (of *Cushman Law Offices PS*); and *Melanie A. Leary* and *Matthew F. Davis* (of *Demco Law Firm PS*), for respondents.

*Kent M. Fandel* on behalf of Washington Realtors, amicus curiae.

¶1 ALEXANDER, J.[*] — After a landslide damaged their home, the homeowners sued the sellers of the home, seeking rescission or, in the alternative, damages for fraud, fraudulent concealment, negligent misrepresentation, and breach of contract. The homeowners also sued the sellers' broker and agent, alleging fraud, fraudulent concealment, negligent misrepresentation, and breach of common law fiduciary duties. They leveled similar claims against their own broker and agent together with a claim for breach of statutory fiduciary duties. The trial court entered summary judgment dismissing all of the homeowners' claims, except the fraudulent concealment claims against the sellers and the sellers' broker and agent regarding cracks in the concrete basement floor. The Court of Appeals affirmed that decision in part and reversed it in part. The sellers and the homeowners' broker and agent then obtained review in this court. We affirm the Court of Appeals' decision and remand to the trial court for further proceedings consistent with this opinion.

I

¶2 In 2004, Timothy Jackowski and Eri Takase (collectively Jackowskis), a married couple, purchased a waterfront home in Mason County from David and Robin Borchelt (Borchelts). In the transaction, the Jackowskis' broker was Hawkins Poe Inc., dba Coldwell Banker Hawkins-Poe Realtors (Hawkins Poe), and their real estate agent was Robert Johnson. The Borchelts' broker was Himlie Realty Inc. and Vince Himlie of Windermere Himlie Real Estate (collectively Windermere Himlie), and their real estate agent was Jef Conklin.

¶3 The Jackowskis and Borchelts entered into a residential real estate purchase and sale agreement (PSA) on May 13, 2004. As part of the transaction, the Borchelts, as

---

[*] Justice Gerry L. Alexander is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

sellers, completed a "Form 17" real property transfer disclosure statement. On this form, the Borchelts checked "no" in response to the following questions: (1) "Has there been any settling, slippage, or sliding of the property or its improvements?" (2) "Does the property contain fill material?" (3) "Is there any material damage to the property from . . . landslides?" and (4) "Are there any other existing material defects affecting the property that a prospective buyer should know about?" Clerk's Papers (CP) at 915, 916. Prompted by an inspection of a county-ordered revegetation project, the Borchelts later amended Form 17 to refer to a Mason County Department of Community Development letter dated June 11, 2003. The letter, which signified the granting of a permit for a block wall as a part of the revegetation project, indicated that the property was located within a landslide hazard area. It also referred to a geotechnological report by geologist Harold Parks, which had been ordered in 2002 when the Borchelts contemplated an addition to the house. The Parks report said that a slope on the property was unstable within the first 25 feet of the shoreline, particularly within the first 10 feet. Although the report indicated that an addition could be safely placed only to the west of the existing house, it was eventually built to the north of the existing house.

¶4 The Borchelts provided the amended Form 17, including the above mentioned documents, to Conklin. Conklin then passed along the information to Johnson. It is unclear from the record when the Jackowskis received and reviewed the amended Form 17. It appears, however, that Johnson e-mailed the form to them within a day or two of the date on which the parties signed the PSA.

¶5 The PSA included an inspection addendum that was signed by the Jackowskis. It provided them with an option to inspect the property within 15 days after they made an offer. Although the Jackowskis obtained a standard home inspection on Johnson's advice, they did not conduct an inspection of soil stability prior to closing. The sale closed on June 30, 2004.

¶6 In 2006, a landslide occurred that caused damage to the house. The Jackowskis were advised by an engineer to vacate the house immediately, and they did so. The Jackowskis claim that at this time they learned from neighbors that the Borchelts had concealed the fact that the addition on the north side of the house had been constructed on uncompacted fill material. The Jackowskis also claim that they learned after the sale had closed that the Borchelts concealed cracks in the concrete basement floor by covering the floor with carpet. The concealment, according to the Jackowskis, occurred after the Borchelts put the house on the market, but prior to the time the Jackowskis first viewed the property.

¶7 The Jackowskis brought suit against the Borchelts for rescission or, alternatively, for damages based on causes of action for fraud, fraudulent concealment, negligent misrepresentation, and breach of contract. The Jackowskis also sued the brokers and agents for fraud or negligent misrepresentation related to the property being in a landslide hazard area and for breach of common law fiduciary duties. The trial court permitted the Jackowskis to amend their complaint against Hawkins Poe and Johnson to include an allegation of failure to meet statutory duties under RCW 18.86.050(1)(c) and against the Borchelts, Windermere Himlie, and Conklin for fraud and fraudulent concealment of cracks in the basement.

## A. BORCHELTS' MOTION FOR SUMMARY JUDGMENT

¶8 The Borchelts moved for a summary judgment dismissing all of the Jackowskis' claims against them. The trial court dismissed the Jackowskis' breach of contract claim on the basis that the Jackowskis failed to respond to that portion of the Borchelts' motion for summary judgment. The trial court also dismissed the Jackowskis' negligent misrepresentation claims, applying the economic loss

rule set forth in *Alejandre v. Bull*, 159 Wn.2d 674, 153 P.3d 864 (2007). The trial court dismissed the Jackowskis' "claims of Fraud and Rescission arising out of the Chapter 64.06 RCW real estate disclosure form, Form 17." CP at 89. Finally, it dismissed the Jackowskis' claims relating to fraud regarding "allegations that the property is in a known landslide hazard area or had been previously subject to landslides," as well as "allegations that the property contained fill or that the addition was constructed on fill." *Id.* at 90. It did so because the evidence showed the Borchelts disclosed to the Jackowskis in written form that the property was in a landslide hazard area and that a reasonable investigation, on which the Jackowskis made their offer contingent, would have revealed the landslide issue and the presence of fill material.

¶9 The trial court denied the Borchelts' request to dismiss the Jackowskis' fraudulent concealment claim insofar as it was based on an allegation that the Borchelts concealed cracks in the basement by covering them with carpet.

## B. HAWKINS POE AND JOHNSON'S MOTION FOR SUMMARY JUDGMENT

¶10 Hawkins Poe and Johnson also moved for summary judgment. The trial court granted their motion only as to the negligent misrepresentation claim, again relying on *Alejandre*. Because the trial court did not address the remaining claims, Hawkins Poe and Johnson again moved for a summary judgment dismissing the claims the trial court had not addressed. The trial court granted the motion also on the basis of *Alejandre*.

## C. WINDERMERE HIMLIE AND CONKLIN'S MOTION FOR SUMMARY JUDGMENT

¶11 Windermere Himlie and Conklin similarly moved for summary judgment. The trial court partially granted

their motion, reasoning that the Jackowskis had received written disclosures that the property was in a landslide hazard area and that a reasonable inspection of the property would have disclosed landslide risk and the presence of fill material. The trial court denied summary judgment on the Jackowskis' fraudulent concealment claim based on cracks in the basement for reasons similar to those set forth by the trial court in response to the Borchelts' motion.

## D. THE COURT OF APPEALS' DECISION

¶12 The Jackowskis appealed the trial court's decisions to the Court of Appeals. That court affirmed the trial court in part and reversed it in part, remanding for trial on unresolved issues. *Jackowski v. Borchelt*, 151 Wn. App. 1, 209 P.3d 514 (2009). Specifically, the Court of Appeals affirmed the trial court's dismissal of the following claims by the Jackowskis: (1) negligent misrepresentation claims against the Borchelts and (2) all fraud and fraudulent concealment claims against "all parties" relating to the landslide issue. *Id.* at 21. The Court of Appeals reversed the trial court's dismissal of the following claims by the Jackowskis: (1) statutory and common law breach of fiduciary duty claims against Hawkins Poe and Johnson, (2) all causes of action relating to fraud regarding fill material, and (3) the breach of contract claims against the Borchelts. The Court of Appeals also held that the Jackowskis were not, under either the economic loss rule or chapter 64.06 RCW, barred from seeking common law rescission of the PSA.

¶13 The Borchelts, Hawkins Poe, and Johnson sought and obtained our review of the Court of Appeals' decision. *Jackowski v. Borchelt*, 168 Wn.2d 1001, 226 P.3d 780 (2010). They claimed that the Court of Appeals erred in (1) reversing the trial court's dismissal of the Jackowskis' claims that the real estate licensees breached statutory and common law fiduciary duties, (2) reversing the trial court's dismissal

of causes of action alleging fraud concerning fill material, and (3) permitting the Jackowskis to seek common law rescission. Windermere Himlie and Conklin did not file a petition for review but argued in their answer to Hawkins Poe and Johnson's petition for review that the Court of Appeals improperly reversed the trial court's dismissal of the claims relating to fill material. In light of the parties' disputes about whether the economic loss rule applies, we stayed consideration of this case until we issued our opinions in *Eastwood v. Horse Harbor Foundation, Inc.*, 170 Wn.2d 380, 241 P.3d 1256 (2010) (plurality opinion) and *Affiliated FM Insurance Co. v. LTK Consulting Services, Inc.*, 170 Wn.2d 442, 243 P.3d 521 (2010).

## II

¶14 We review de novo an order granting summary judgment, "taking all facts and inferences in the light most favorable to the nonmoving party." *Biggers v. City of Bainbridge Island*, 162 Wn.2d 683, 693, 169 P.3d 14 (2007). Summary judgment is appropriate only if the moving party shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c).

¶15 This case also presents questions of statutory interpretation, which we review de novo. *See Whatcom County Fire Dist. No. 21 v. Whatcom County*, 171 Wn.2d 421, 427, 256 P.3d 295 (2011) (citing *In re Pers. Restraint of Cruze*, 169 Wn.2d 422, 426, 237 P.3d 274 (2010)). In interpreting the meaning of a statute, we are to discern and implement the legislature's intent. If we conclude that the statutory language is unambiguous and legislative intent is apparent, we will not construe the statute otherwise. Plain meaning, however, may be gleaned " 'from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.' " *Id.* at 433 (Chambers, J., dissenting) (quoting

*Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002)).

## III

¶16 We begin by addressing the question of whether the Court of Appeals erred in reversing the trial court's dismissal of the Jackowskis' claims that Hawkins Poe and Johnson breached common law and statutory fiduciary duties. As stated above, the trial court's decision and the Court of Appeals' decision, as well as most of the parties' briefing for our review, relied upon our exposition of the economic loss rule in *Alejandre*. Since accepting review of this case, we have recast the economic loss rule as the independent duty doctrine. *See Eastwood*, 170 Wn.2d 380. The parties have provided additional briefing, which we have considered.

### A. THE INDEPENDENT DUTY DOCTRINE

¶17 The long-established purpose of the economic loss rule was to supply courts with a method by which to discern the line between contract and tort. *Alejandre*, 159 Wn.2d at 681. In *Alejandre*, home purchasers made a tort claim against a seller for an allegedly negligent misrepresentation regarding a septic tank. We disallowed the claim, concluding that it was barred by the then-extant economic loss rule. *Id.* at 689.

¶18 Subsequent to *Alejandre*, in *Eastwood* we said that the "term 'economic loss rule' has proved to be a misnomer." *Eastwood*, 170 Wn.2d at 387 (Fairhurst, J., plurality opinion). In its place we adopted the nomenclature independent duty doctrine. *Id.* at 398; *see also id.* at 406, 408 (Chambers, J., concurring). We recognized in *Eastwood* that the duty to not commit waste was based on either statute and common law or statute alone. We held, therefore, that the duty to not commit waste was independent of the lease agreement. We concluded that "[a]n injury is remediable in tort if it traces

back to the breach of a tort duty arising independently of the terms of the contract." *Id.* at 389.[1]

## B. PROSPECTIVE APPLICATION

 ¶19 Before reaching the question of whether an independent duty existed in this case, we must address an argument made by Hawkins Poe and Johnson that the doctrine enunciated in *Eastwood* should apply prospectively only. *See* Pet'rs Hawkins Poe and Johnson's Suppl. Br. re *Eastwood* and *Affiliated FM* at 15. " 'Ordinarily, a decision of a court of last resort overruling a former decision is retrospective as well as prospective in its operation, unless specifically declared by the opinion to have a prospective effect only.' " *State ex rel. Wash. State Fin. Comm. v. Martin*, 62 Wn.2d 645, 671, 384 P.2d 833 (1963) (quoting *Fla. Forest & Park Serv. v. Strickland*, 154 Fla. 472, 476, 18 So. 2d 251 (1944)). The default of retroactive application is " ' "overwhelmingly the norm." ' " *Lunsford v. Saberhagen Holdings, Inc.*, 166 Wn.2d 264, 270, 208 P.3d 1092 (2009) (quoting *Robinson v. City of Seattle*, 119 Wn.2d 34, 74, 830 P.2d 318 (1992) (quoting *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 535, 111 S. Ct. 2439, 115 L. Ed. 2d 481 (1991))). In *Lunsford*, we unequivocally held that "[b]y its very nature, the decision to apply a new rule prospectively must be made in the decision announcing the new rule of law." *Id.* at 279. Because we did not decide in *Eastwood* or *Affiliated FM* that the independent duty doctrine is to be applied prospectively only, we decline to do so here.

---

[1] In *Eastwood*, Justice Fairhurst wrote for four justices and concluded that when deciding if a duty arises independent of contract, we must consider logic, common sense, justice, policy, and precedent. *Eastwood*, 170 Wn.2d at 389. Justice Chambers, writing for four concurring justices, indicated that the independent duty doctrine is "not a rule at all; rather it is an analytical tool used by courts to decide whether there is an independent duty cognizable in tort in the first instance." *Id.* at 409 (Chambers, J., concurring). Chief Justice Madsen also concurred but stated that the rearticulation of the economic loss rule as the independent duty doctrine was "unnecessary." *Id.* at 402 (Madsen, C.J., concurring).

## C. DUTIES OWED TO THE JACKOWSKIS BY HAWKINS POE AND JOHNSON

### 1. Common Law Duties

■ ¶20 In their complaint, the Jackowskis alleged that Hawkins Poe and Johnson breached their common law fiduciary duties to disclose material information about the property. *See, e.g.*, CP at 1392. In response, Hawkins Poe and Johnson assert that the common law fiduciary duties of real estate licensees[2] were abrogated by chapter 18.86 RCW. *See, e.g.*, Hawkins Poe and Johnson's Pet. for Review at 13. To interpret a statute, we look first to the plain meaning of its language. *See Dowler v. Clover Park Sch. Dist. No. 400*, 172 Wn.2d 471, 481, 258 P.3d 676 (2011). Chapter 18.86 RCW contains two provisions that are particularly relevant to our inquiry. The first provision, RCW 18.86.110, provides that chapter 18.86 RCW "supersedes only the duties of the parties under the common law, including fiduciary duties of an agent to a principal, to the extent inconsistent with this chapter. The common law continues to apply to the parties in all other respects." The other provision, RCW 18.86.050(1), states that "[u]nless additional duties are agreed to in writing signed by a buyer's agent, the duties of a buyer's agent are *limited to* those set forth in RCW 18.86.030 and [those listed in this statute]."[3] (Emphasis added.) Thus, although RCW 18.86-.110 retains the common law to the extent it is not incon-

---

[2] " 'Licensee' means a real estate broker, associate real estate broker, or real estate salesperson, as those terms are defined in chapter 18.85 RCW." RCW 18.86.010(8).

[3] RCW 18.86.050 sets forth a buyer's agent's fiduciary duties, which include loyalty to the buyer, timely disclosure to the buyer of any conflicts of interest, advising the buyer to seek expert advice on matters relating to the transaction that are beyond the agent's expertise, nondisclosure of confidential information, and good faith and continuous efforts to find a property for the buyer. Additional duties generally applicable to all licensees are set forth in RCW 18.86.030; duties specifically applicable to the seller's agent are set forth in RCW 18.86.040.

sistent with chapter 18.86 RCW, the legislature redefined the duties of real estate brokers. *See Sing v. John L. Scott, Inc.*, 134 Wn.2d 24, 31 n.3, 948 P.2d 816 (1997) (noting that "the Legislature enacted comprehensive legislation which redefined the duties of real estate brokers").

¶21 In adopting this statutory scheme, the legislature changed some of the common law fiduciary duties of real estate licensees and codified other preexisting duties. For example, under the prior common law, real estate agents were required to "scrupulously avoid representing any interest antagonistic to that of the principal in transactions." *Mersky v. Multiple Listing Bureau of Olympia, Inc.*, 73 Wn.2d 225, 229, 437 P.2d 897 (1968). The legislature, however, now permits dual agency under chapter 18.86 RCW. *See* RCW 18.86.050(2)(b), .010(7). Thus, a single broker may represent multiple sellers and buyers at the same time even though their interests may conflict. Furthermore, a dual agent may market a property after a client-buyer has made an offer to buy it even though doing so might not be in the client-buyer's interests. RCW 18.86.060(4)(a).

¶22 Since the language of the statute, RCW 18.86.110, is not ambiguous, we will not construe it to mean anything different from what it says: common law duties continue only to the extent they have not been limited by or are not otherwise inconsistent with the statute. That does not, however, end our inquiry.

### 2. Statutory Duties

¶23 We next determine whether Hawkins Poe and Johnson owe the Jackowskis an independent duty based in statutory law. The Jackowskis allege that Hawkins Poe and Johnson breached their duty under RCW 18.86.050(1)(c), which requires a buyer's agent to "advise the buyer to seek expert advice on matters relating to the transaction that are beyond the agent's expertise." More specifically, the

Jackowskis claim that Hawkins Poe and Johnson should have advised the Jackowskis to hire a geotechnical expert to inspect the property. Hawkins Poe and Johnson make several arguments in an attempt to avoid liability; however, none of these arguments adequately addresses the Jackowskis' allegation that the real estate licensees breached RCW 18.86.050(1)(c) by failing to advise the Jackowskis to seek the advice of a geotechnical expert. Hawkins Poe and Johnson first argue that the "legislative enactments codified in [chapter] 18.86 [RCW] recognize and accept that real estate agents do not have an independent duty to conduct an inspection of the property." Pet'rs Hawkins Poe and Johnson's Suppl. Br. re *Eastwood* and *Affiliated FM* at 7.[4] Although none of the parties disagree with this argument, it is not germane to the contention that Hawkins Poe and Johnson should have advised the Jackowskis to seek expert advice.

■ ¶24 Hawkins Poe and Johnson also argue that the PSA had already allocated the risk of disclosure failures and, therefore, "[a]llowing a party to impose additional tort duties not set forth in the contract, but within the bargained-for subject matter of the contract, would circumvent the allocation of losses set forth in, and impair the integrity of, the governing contract." *Id.* at 10. Parties to a contract may allocate the risk between them. But here, Hawkins Poe and Johnson, as real estate licensees, are not parties to the contract. The issue before us, involving allegations of breach of statutory duties by real estate licensees imposed under RCW 18.86.050(1)(c), is independent of the bargained-for subject matter of the PSA.

---

[4] Hawkins Poe and Johnson cite RCW 64.06.020 to support their argument that real estate licensees do not owe an independent duty to inspect the property. However, RCW 64.06.020 merely articulates the disclosure requirements of the seller (Form 17) but does not reference duties owed by real estate licensees. The language referenced by Hawkins Poe and Johnson, which advises buyers to obtain an expert to inspect the property, does not eliminate the buyer's agents' duty to advise the buyer to seek expert advice as set forth in RCW 18.86.050(1)(c).

■ ¶25 Hawkins Poe and Johnson also contend that the duty imposed under RCW 18.86.050(1)(c) can be understood

> as a duty to refer a client to an attorney should legal questions arise in a transaction, to an accountant should tax questions arise, or to a mortgage advisor should there be questions involving lending. It should not be construed as a duty to advise a client to seek additional inspections.

Pet'rs Hawkins Poe and Johnson's Suppl. Br. re *Eastwood* and *Affiliated FM* at 11-12. Contrary to Hawkins Poe and Johnson's assertion, RCW 18.86.050(1)(c) does not limit a licensees' duties to these hypothetical situations. Rather the statute broadly includes "matters relating to the transaction that are beyond the agent's expertise." RCW 18.86-.050(1)(c). In our view, informing a party to seek expert advice from a geotechnical expert could fall within the ambit of this statute.

■ ¶26 Hawkins Poe and Johnson argue, additionally, that the Court of Appeals "erred in holding that [chapter] 18.86 [RCW] creates a private right of action." Suppl. Br. of Pet'rs Hawkins Poe and Johnson at 15. The Court of Appeals did not indicate that it was creating a new cause of action and did not apply the three-part test, set forth in *Bennett v. Hardy*, 113 Wn.2d 912, 920-21, 784 P.2d 1258 (1990), for determining whether a statue creates a new cause of action.[5] Chapter 18.86 RCW does not indicate the creation of a new statutory cause of action, but it does state that the common law continues to apply where it is not limited or inconsistent. *See* RCW 18.86.110. Therefore, common law tort causes of action remain the vehicle through which a party may recover for a breach of statutory duties set forth in chapter 18.86 RCW.

---

[5] Under *Bennett*, this court considers the following factors to determine whether there is an implied statutory cause of action: "[F]irst, whether the plaintiff is within the class for whose 'especial' benefit the statute was enacted; second, whether legislative intent, explicitly or implicitly, supports creating or denying a remedy; and third, whether implying a remedy is consistent with the underlying purpose of the legislation." *Bennett*, 113 Wn.2d at 920-21.

¶27 We hold that there is sufficient evidence in the record on the factual issue of whether Hawkins Poe and Johnson violated RCW 18.86.050(1)(c) to survive summary judgment. Therefore, we affirm the Court of Appeals' reversal of the trial court's grant of summary judgment on the Jackowskis' claims that Hawkins Poe and Johnson breached statutory duties.

## IV

¶28 The next question before us is whether the Court of Appeals erred in finding that chapter 64.06 RCW does not bar common law rescission. The Borchelts make a statutory argument that "[c]hapter 64.06 RCW eliminates the availability of common law rescission with respect to claims based solely on Form 17 disclosures, where any such claim does not require proof of the seller's 'actual knowledge.'" Borchelts' Pet. for Review at 13. The Borchelts depend on RCW 64.06.070 and .050 to support their abrogation argument. RCW 64.06.070 states:

> *Except as provided in RCW 64.06.050*, nothing in this chapter shall extinguish or impair any rights or remedies of a buyer of real estate against the seller or against any agent acting for the seller otherwise existing pursuant to common law, statute, or contract; nor shall anything in this chapter create any new right or remedy for a buyer of [residential] real property other than the right of rescission exercised on the basis and within the time limits provided in this chapter.

(Emphasis added.) RCW 64.06.050(1) provides that "[t]he seller shall not be liable for any error, inaccuracy, or omission in the real property . . . disclosure statement if the seller had no *actual knowledge* of the error, inaccuracy, or omission." (Emphasis added.) Although RCW 64.06.030 permits buyers to rescind an offer within three days of receiving the disclosure statement, the statute does not explicitly bar buyers from seeking remedies, including rescission, at a later date if they discover negligence or

intentional misrepresentations. The Borchelts read the aforementioned provisions together to mean that the common law was retained except in situations, such as they claim here, where the seller lacked adequate knowledge relating to Form 17 disclosures as provided in RCW 64.06.050. We agree with the Borchelts that to the extent the Jackowskis base their request for rescission on negligent misrepresentation under RCW 64.06.050(1), they must show actual knowledge, as the statute indicates.[6]

¶29 The Borchelts also argue that the Jackowskis are not entitled to common law rescission because they are limited to the statutory rescission right created in RCW 64.06.030. We disagree. It is true that RCW 64.06.030 establishes a right of rescission that must be exercised, if at all, within three days of the buyer's receipt of the disclosure statement. If the buyer does not exercise the right to rescind within the time limit, the disclosure statement is considered approved and accepted. RCW 64.06.030. However, as we noted, RCW 64.06.030 supplements the common law rights of buyers; it does not displace those rights. *See* RCW 64.06.070 ("nothing in this chapter shall extinguish or impair any rights or remedies of a buyer of real estate"). A buyer is, therefore, entitled to pursue common law remedies, including common law rescission, outside of that three-day period. We hold that the Court of Appeals was correct in holding that chapter 64.06 RCW does not bar a common law rescission action based on misrepresentations in the Form 17 disclosures.

## V

¶30 The final issue in this case is whether the Court of Appeals erred in reversing the trial court's grant of summary judgment on the fill issue. The Court of Appeals

---

[6] Although the Court of Appeals addressed the rescission issue solely with regard to the Jackowskis' negligent misrepresentation claims, we do not view the Jackowskis' request for rescission as being so limited.

explained that "the Jackowskis sued the Borchelts alleging both fraud and fraudulent concealment, while alleging only fraudulent concealment against Hawkins-Poe, Johnson, Windermere Himlie, and Conklin." *Jackowski*, 151 Wn. App. at 17. That court concluded that "the Borchelts were not entitled to summary judgment dismissal of the fill issue as a matter of law for the Jackowskis' fraud and fraudulent concealment claims." *Id.* at 19. The Court of Appeals' decision does not mention the Jackowskis' fraudulent concealment claims against the real estate licensees insofar as those claims relate to the fill issue.[7] After our decision in *Eastwood*, the Court of Appeals' reliance on the economic loss rule is in error. Because the duty to not commit fraud is independent of the contract, the independent duty doctrine permits a party to pursue a fraud claim regardless of whether a contract exists. *See Eastwood*, 170 Wn.2d at 390. The same is true for a claim of negligent misrepresentation, but only to the extent the duty to not commit negligent misrepresentation is independent of the contract.

¶31 In a fraud claim, the plaintiffs must establish that they had a right to rely on the representation. *Jackowski*, 151 Wn. App. at 17 (citing *Williams v. Joslin*, 65 Wn.2d 696, 697, 399 P.2d 308 (1965)). Because the Borchelts represented in Form 17 that the property did not contain fill material, the Jackowskis were entitled to rely upon the representation. The Borchelts contend that because they later amended the Form 17 and disclosed a geotechnological report indicating the property was within a landslide area and unstable within 25 feet of the shoreline, an adequate disclosure was made. The parties, however, dispute the facts with regard to when the Jackowskis received the amended Form 17. Because there are genuine issues of material fact, it was improper for the trial court to grant summary judgment on the Jackowskis' fraud claim.

---

[7] The Jackowskis also argued to the trial court that the Borchelts are liable for constructive fraud for failing to disclose the presence of fill. *See* CP at 368 (citing *Sorrell v. Young*, 6 Wn. App. 220, 225, 491 P.2d 1312 (1971)). The Court of Appeals, however, did not address this claim.

¶32 Similar facts drive the analysis of the fraudulent concealment claim. We have held that a "vendor's duty to speak arises where . . . the defect would not be disclosed by a careful, reasonable inspection by the purchaser." *Alejandre*, 159 Wn.2d at 689 (citing *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 524, 799 P.2d 250 (1990)). The trial court concluded there was no material question of fact that the presence of fill could have been discovered by such a reasonable inspection. In a deposition, the Jackowskis' expert, David Strong, answered "[y]es" when asked if "any competent soils inspector, reviewing the property, would have been able to see there was fill on the property." CP at 141.1. He also indicated he believed that he had characterized the fill as being "obvious" to any "qualified geologist" during his inspection. *Id.* The Court of Appeals found it significant that Strong's "property evaluation occurred after the sliding event" and concluded that it "does not help us decide whether the presence of fill would have been disclosed with a careful, reasonable inspection at the time of the sale." *Jackowski*, 151 Wn. App. at 18.

¶33 Additionally, Randall Thompson, the architect for the Borchelts' addition, stated in a declaration that "[t]he fill is apparent and is located along the north boundary line of the property and is armored with quarry rock." Suppl. CP at 1402. Again, the Court of Appeals found it significant that "Thompson based these statements on what he observed when he inspected the property after the sliding event." *Jackowski*, 151 Wn. App. at 19. We agree it is significant that this evidence was obtained after the sliding event and, therefore, the fill may not have been "obvious" or "apparent" prior to the landslide.

¶34 Our review of the record reveals additional evidence that supports the Jackowskis' argument that summary judgment was inappropriate on their claims related to fraud. In this regard, the Jackowskis submitted evidence purporting to show that the Borchelts knew the property

contained fill material. Robin Borchelt was asked in a deposition if the retaining wall near the house "is backfilled with fill," and she answered "[p]art of it probably is." CP at 366. When asked again if there was fill behind the retaining wall, Robin Borchelt stated she "assum[ed]" fill material was used to "level it out." *Id.* The Borchelts' contractor who built the addition to the house agreed with the Jackowskis' counsel during a deposition that the work he bid to perform on the Borchelts' property "included relocating materials on the site to use as fill." *Id.* at 368. He also agreed that "backfill extends all the way back to the original house foundation." *Id.* While not dispositive of the claims relating to fraud, when viewed in the light most favorable to the Jackowskis, this evidence shows that there are genuine issues of material fact relating to whether the fill could have been disclosed by a reasonable inspection prior to the landslide. We, therefore, affirm the Court of Appeals' reversal of the trial court's grant of summary judgment on the claims relating to fraud pertaining to the fill issue.

## VI

¶35 The Court of Appeals correctly reversed the trial court's dismissal of the Jackowskis' claims for breach of statutory fiduciary duties. The Court of Appeals also properly acknowledged that chapter 64.06 RCW does not bar common law rescission, and it properly reversed the trial court's dismissal of the Jackowskis' causes of action relating to fraud concerning the fill issue. For the reasons stated above, we affirm the Court of Appeals and remand to the trial court for further proceedings.

C. JOHNSON, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, STEPHENS, and WIGGINS, JJ., concur.

MADSEN, C.J., concurs in the result only.

Motions for reconsideration denied September 24, 2012.