# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MEIDAN KOTI, LLC, a Washington limited liability company, | No. 55815-7-II |
| Appellant, | |
| v. | |
| LLOYD STENERSEN and DEBORAH STENERSEN, husband and wife and the marital community composed thereof, | UNPUBLISHED OPINION |
| Respondents. | |

GLASGOW, C.J.—Dale A. and Jaana H. Haagen, through Meidan Koti LLC, entered into a residential real estate purchase and sale agreement with Lloyd and Deborah Stenersen to buy the Stenersens' home, barn, and shop. The Stenersens ran a wedding venue business using the barn. The Stenersens disclosed some defects with the stucco siding on the house, but they did not disclose a 2006 inspection report that showed high levels of moisture underneath the stucco siding in multiple locations. They also did not have the permits necessary to host weddings in the barn.

Before closing, multiple contractors performed inspections at the property. The reports revealed high levels of moisture under the siding in several locations, and the siding inspector recommended further investigation. The Haagens also learned prior to closing that the barn lacked the requisite permits and licenses to operate as a commercial wedding venue. The sale closed in 2016 despite these issues.

In 2020, the Haagens learned it would cost more than $750,000 to repair the stucco siding, a sum far in excess of what they originally expected. Meidan Koti sued the Stenersens alleging fraud, fraudulent concealment, and misrepresentation related to the stucco siding, wedding venue permits, and other ancillary issues. The trial court granted the Stenersens' motion for summary judgment, dismissed Meidan Koti's claims, and denied Meidan Koti's motion for reconsideration.

On appeal, Meidan Koti argues the trial court improperly relied on an integration clause in the parties' purchase and sale agreement, there were genuine issues of material fact as to what the Haagens were told and understood before closing, and the Haagens had very little information just prior to closing about the problems with the stucco and the permits. Meidan Koti contends that the trial court erred in granting summary judgment for the Stenersens. We disagree and affirm.

FACTS

The Stenersens owned property in Clark County containing a house constructed in 1999, a shop, and a barn. The house had stucco siding. In 2006, at the request of Lloyd Stenersen, certified contractors conducted an Exterior Insulation and Finish System (EIFS) inspection of the house. The inspection reported "elevated moisture readings ranging from 19.2% to 32.4%" underlying the stucco siding in multiple locations. Clerk's Papers (CP) at 33 (boldface omitted). Moisture readings over 20 percent "in the underlying wood sheathing . . . create conditions conducive to decay of the underlying wood wall assembly." CP at 41. The inspection "recommend[ed] a further invasive investigation." *Id.*

The Stenersens maintained the stucco siding by caulking and recaulking the windows, but they did not conduct a further investigation as recommended in the 2006 report. The Stenersens

also filed multiple defective siding affidavits with Clark County and received a property tax reduction as a result from 2006 to 2016.

In 2014, the Stenersens began running a business hosting weddings out of the barn. In May 2015, the county gave notice that the Stenersens did not have the necessary permits to host weddings in the barn. The wedding venue was required, in part, to become permitted as a winery. The Stenersens began the permitting process, including applying for a permit to use the barn for "barrel aging of wine." CP at 141.

In spring 2016, the Stenersens listed the property for sale with a realtor for a price of $2.5 million. By June, the Haagens expressed interest in purchasing the property, and they visited the property with the realtor. Dale Haagen had experience developing and selling real estate. Some of his experience included hiring contractors to perform utility and zoning work as well as listing and selling properties as a real estate agent for a number of years.

On June 7, 2016, the Haagens made an offer to buy the property for $1.75 million with $100,000 earnest money. When making the offer, Dale Haagen explained a lower price was warranted, in part because it was hard to value the wedding venue as it was unclear whether "governmental requirements" could be met. CP at 261. He told the realtor he was "willing to buy the property 'AS-IS', without Seller representations or warranties, relative to potential Wedding Barn 'issues' regardless of whether they are known or unknown at the time of purchase." CP at 262.

The parties then executed a residential real estate purchase and sale agreement on June 14, 2016. The agreement provided that $100,000 would be paid as earnest money. The agreement also allowed for an inspection period before closing, and it contained an integration clause stating that

3

the agreement "constitutes the entire understanding between the parties and supersedes all prior or contemporaneous understandings and representations. No modification of this Agreement shall be effective unless agreed [to] in writing and signed by Buyer and Seller." CP at 20. The parties also executed an addendum with an "as is" clause, which read, "Property to be sold 'AS IS' without seller representations or warranties, relative to potential wedding venue/barn issues regardless if they are known or unknown at the time of purchase." CP at 22.

On June 20, 2016, the parties executed another addendum to the purchase and sale agreement, increasing the purchase price to $1.95 million.

On June 21, 2016, the Stenersens also provided the Haagens with a signed "Form 17 Seller Disclosure Statement." CP at 14. The statement disclosed a defect with the stucco siding. On the form, Lloyd Stenersen also explained,

> The stucco siding has a bad name but I am not aware of any damage or rot of any kind. We did change the front of the garage from the stucco siding about 5 years ago and there was no[] sign of any moisture behind the stucco siding when we removed it.

*Id*. The Stenersens did not mention the 2006 stucco inspection in the disclosure statement.

In July 2016, Northwest Home Inspectors LLC inspected the property. The inspection found moisture stains in the attics, cracks in the ceilings, moisture stains and cracks in the siding, wood rot in the trim of all buildings, and moisture damage around doors and windows. Northwest Home "[r]ecommend[ed] having a stucco contractor evaluate the stucco." CP at 172.

On July 14, 2016, Dale Haagen sent an e-mail to the realtor discussing the issues raised in the inspection and the costs to perform repairs. In his e-mail, Haagen emphasized that the inspectors "pointed out a lot of things that aren't favorable (and are expensive overall to correct) and the initial EIFS/Stucco reviewer has expanded the recognition that the place needs, at a

minimum, a lot of immediate [money] put into it." CP at 197. Haagen also acknowledged that "there is a lot of dry rot on the premises (all buildings) that must be dealt with and it will take a lot of time to cut it out and properly replace the rotting wood areas." *Id.* Moisture was another concern for Haagen, who noted, "[A] lot of previous moisture, in non-desired places, ha[d] been identified in the home," as well as "blistering and warping in upper window ledges/sills, etc." CP at 198. Haagen also noted after the inspection "a substantial amount of additional staining on the outside surface of the EIFS and there [are] cracks and damaged areas in numerous places." *Id*. He sought to reduce the sale price from $1.95 million to $1.8 million in exchange for a sale of the property "AS-IS" with no repairs except replacing any damaged windows that were still under warranty. CP at 199.

On July 17, 2016, Lloyd Stenersen responded by e-mail saying that he had already significantly dropped the sale price and he was only willing to provide the Haagens $2,000 for further repairs. The Stenersens also offered to return the Haagens' earnest money if they were having second thoughts. Ultimately, the Stenersens extended the time before the earnest money became nonrefundable to allow a more thorough investigation of the stucco.

On July 21, 2016, Inspection Tech LLC completed an inspection of the stucco siding for the Haagens and prepared a report. The inspection found elevated moisture readings, caulking failure, impact damage, improper attachment to the EIFS, and missing mesh. The inspection identified elevated moisture readings in two locations on the main house. The report also recorded water damage to soffit material that needed replacement, and impact damage that was "cosmetic." CP at 161. The report concluded that "[t]he EIFS should be removed and the underlying subsiding inspected for damage" and "recommend[ed] a qualified EIFS contractor perform the repair work,"

CP at 161-62. This inspection revealed fewer areas of elevated moisture than the 2006 inspection, of which the Haagens remained unaware.

On July 26, 2016, the Haagens received a $7,758.71 estimate for repairs based on the Northwest Home inspection. However, Dale Haagen noted in an e-mail that he was aware this estimate did not include the findings made in the Inspection Tech inspection related to elevated moisture readings and the recommended stucco removal.

On July 27, 2016, the parties executed an Inspection Response Form 35, where they agreed that the Stenersens would credit $2,000 at closing for dry rot, fund the $7,758.71 in repairs covered in the estimate, and replace certain doors and windows if they were still under warranty. At this point, the inspection contingency closed and the earnest money became nonrefundable.

On September 16, 2016, Lloyd Stenersen received an e-mail from Clark County regarding winery permits for the barn. The county explained, "[T]he winery has to be licensed by both the federal government and State of Washington" and requested proof of the permits. CP at 225. Lloyd Stenersen forwarded this information to the realtor in an e-mail. In an October 2016 e-mail exchange between the realtor and Dale Haagen, the realtor communicated that permits for the barn were not transferrable.

On September 27, 2016, the Haagens assigned their interest in the purchase and sale agreement to Meidan Koti LLC. Around October 3, 2016, the Haagens proposed an addendum to the parties' agreement to clarify work that the Stenersens were to complete on the barn. One of the demands in the addendum was that the Stenersens complete "[a]ll Clark County permit application work." CP at 230. The Stenersens did not sign the proposed addendum.

Prior to closing, the Stenersens also proposed an addendum regarding the "wedding venue," clarifying the status of unfinished work on the barn and that permits attained by the Stenersens would not be transferable. CP at 231. Dale Haagen did not sign the addendum and told the realtor that he only read this proposed addendum after closing. Around October 20, 2016, Dale Haagen met with Melissa Curtis, a permit technician for Clark County, to discuss winery permits for the barn and its status as a wedding venue. According to Curtis, no permit for the barn had been issued. Around October 27, 2016, the sale closed.

A few months later, in March 2017, Clark County sent Median Koti a letter inquiring whether it wanted to stay in the defective siding program. Dale Haagen communicated with the Clark County Assessor's office and learned that the Stenersens had been enrolled in the county's defective siding program since 2006.

Three years later, the Haagens obtained an additional inspection of the stucco siding. The report found multiple deficiencies in the siding with "signs of past and present water infiltration," "which individually or in combination have resulted in property damage or have the potential to result in future property damage." CP at 433. The estimated amount necessary to repair the stucco siding was $772,121.

Meidan Koti sued the Stenersens, alleging fraud, fraudulent concealment, and negligent misrepresentation. After discovery, the Stenersens moved for summary judgment dismissal of all three claims. The trial court granted the Stenersens' motion and dismissed all of Meidan Koti's claims with prejudice, reasoning in part that before closing, the Haagens were aware of the defective siding and the fact that permits had not been obtained that would allow the wedding business to continue. The trial court also denied a motion for reconsideration and awarded attorney

fees to the Stenersens under an attorney fee provision in the purchase and sale agreement. Meidan Koti appeals.

ANALYSIS

A trial court may grant summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, establishes that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). We review a trial court's order on a motion for summary judgment de novo. *Wilkinson v. Chiwawa Cmtys. Ass'n*, 180 Wn.2d 241, 249, 327 P.3d 614 (2014). We review a trial court's denial of a motion for reconsideration for abuse of discretion. *Rivers v. Wash. State Conf. of Mason Contractors*, 145 Wn.2d 674, 685, 41 P.3d 1175 (2002).

I. ELEMENTS OF MEIDAN KOTI'S TORT CLAIMS

Meidan Koti raised three claims against the Stenersens—fraud, fraudulent concealment, and negligent misrepresentation. The burden is on the "plaintiff to prove the existence of all the essential and necessary elements" for each claim and the absence of any element is "fatal to a recovery." *Puget Sound Nat'l Bank v. McMahon*, 53 Wn.2d 51, 54, 330 P.2d 559 (1958) (emphasis omitted).

First, there are nine elements of fraud:

(1) [R]epresentation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.

*Stiley v. Block*, 130 Wn.2d 486, 505, 925 P.2d 194 (1996). To prove a fraud claim, the plaintiff must establish that they were entitled to reasonable reliance or "had a right to rely on the representation" at issue. *Jackowski v. Borchelt*, 174 Wn.2d 720, 738, 278 P.3d 1100 (2012).

Fraudulent concealment exists when the seller has a duty to disclose a material fact and fails to do so. *Stieneke v. Russi*, 145 Wn. App. 544, 560, 190 P.3d 60 (2008). A seller's duty to disclose arises where

> (1) the residential dwelling has a concealed defect; (2) the vendor has knowledge of the defect; (3) the defect presents a danger to the property, health, or life of the purchaser; (4) the defect is unknown to the purchaser; and (5) *the defect would not be disclosed by a careful, reasonable inspection by the purchaser*.

*Alejandre v. Bull*, 159 Wn.2d 674, 689, 153 P.3d 864 (2007) (emphasis added). "[F]raudulent concealment does not extend to those situations where the defect is apparent." *Atherton Condo. Apt.-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 525, 799 P.2d 250 (1990).

Finally, for negligent misrepresentation, a plaintiff must prove with clear and convincing evidence that

> (1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) *the plaintiff relied on the false information*, (5) *the plaintiff's reliance was reasonable*, and (6) the false information proximately caused the plaintiff damages.

*Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Local Union No*. 174, 198 Wn.2d 768, 800 n.13, 500 P.3d 119 (2021) (emphasis added) (quoting *Ross v. Kirner*, 162 Wn.2d 493, 499, 172 P.3d 701 (2007)), *pet. for cert. filed*, No. 21-1449 (Wash. May 12, 2022); *see also Brummett v. Washington's Lottery*, 171 Wn. App. 664, 679, 288 P.3d 48 (2012) (holding that trial court properly dismissed negligent misrepresentation claim where plaintiff failed to establish justifiable reliance). An

omission alone cannot constitute negligent misrepresentation because the plaintiff must justifiably rely on the misrepresentation. *Ross*, 162 Wn.2d at 499. "Moreover, the plaintiff must not have been negligent in relying on the representation." *Id.* at 500.

All of Meidan Koti's claims include an element of reasonable or justifiable reliance or require the alleged defect to actually be concealed. *Id.*; *Jackowski*, 174 Wn.2d at 738; *Alejandre*, 159 Wn.2d at 689. Division One has held that when an inspection demonstrates or a buyer discovers some evidence "of a defect, they are on notice and have a duty to make further inquiries." *Douglas v. Visser*, 173 Wn. App. 823, 832, 295 P.3d 800 (2013). The buyer on notice of a defect has a duty to conduct "a reasonable inspection." *Id.* at 833. And a buyer cannot justifiably rely on a seller's representation if the defect is known. *Id* at 834. In sum, either justifiable reliance or concealment was necessary for each of Meidan Koti's claims to go forward. *See Ross*, 162 Wn.2d at 500; *Jackowski*, 174 Wn.2d at 738; *Alejandre*, 159 Wn.2d at 689.

## II. REASONABLE RELIANCE OR CONCEALMENT

A.     Reliance on Statements Regarding the Stucco Siding

The trial court granted summary judgment dismissing Meidan Koti's tort claims, reasoning that it was undisputed the Haagens knew prior to closing that there were issues with the stucco siding. We agree, and therefore the Haagens could not have reasonably relied on any assurances regarding the siding.

If justifiable reliance is not satisfied and if the defect is not concealed, then a claim for fraud, fraudulent concealment, or negligent misrepresentation must fail. *Jackowski*, 174 Wn.2d at 740; *Atherton*, 115 Wn.2d at 525; *Ross*, 162 Wn.2d at 500. Generally, a buyer has a right to rely on a seller's written representations. *Jackowski*, 174 Wn.2d at 738. But "[o]nce a buyer discovers

evidence of a defect, they are on notice and have a duty to make further inquiries." *Douglas*, 173 Wn. App. at 832. This is true even where the extent of the defect is greater in magnitude than anticipated. *Id.*

For example, in *Alejandre*, the Supreme Court held claims of fraudulent conveyance and fraudulent misrepresentation did not survive as a matter of law because the buyers had notice of a possible issue and further inspection could have revealed the defect before closing. 159 Wn.2d at 689-90. Prior to purchase, the seller pumped the septic system and a septic tank service issued a report stating that the "septic system's back baffle could not be inspected but there was '[n]o obvious malfunction of the system at time of work done.'" *Id.* at 679 (alteration in original). The Supreme Court explained that the buyers were on notice of the incomplete inspection "but failed to conduct any further investigation and indeed, accepted the findings of an incomplete inspection report. Having failed to exercise the diligence required, they were unable to present sufficient evidence of a right to rely on the allegedly fraudulent representations." *Id*. at 690.

In *Douglas*, Division One held that the trial court should have dismissed claims of fraudulent concealment and negligent misrepresentation, among others, even though the sellers hid significant rot and decay, because the buyers' inspection put the buyers on notice that some rot and decay existed. 173 Wn. App at 834. The buyers' inspector's discovery of some rot and decay was enough to require them to follow up diligently with further inquiries and inspection. *Id.* Thus, they did not reasonably rely on misstatements in the sellers' disclosure form. *Id.* at 833-34. The fact that the defects were significantly worse than the buyers' inspector realized did not change this result. *Id.* at 832.

Here, Dale Haagen explained that he relied on the answer to question 4F on the Form 17 Seller Disclosure Statement, which indicated, "The stucco siding has a bad name but *I am not aware of any damage or rot of any kind*. We did change the front of the garage from the stucco siding about 5 years ago and there was no[] sign of any moisture behind the stucco siding." CP at 14 (emphasis added). This statement was misleading because it did not mention elevated moisture levels under the siding in multiple locations that the Stenersens knew about from the 2006 inspection report. However, even though Dale Haagen was unaware of the 2006 siding inspection report, he was aware of his own inspection report that revealed elevated moisture levels and recommended further investigation. He was also aware that the purchase and sale agreement disavowed reliance on assurances outside of the contract itself.[1]

The Haagens' 2016 Inspection Tech report noted, "Elevated moisture readings . . . on the main house," suggested "[t]he EIFS should be removed and the underlying subsiding inspected for damage," and "recommend[ed] a qualified EIFS contractor perform the repair work." CP at 161-62. It is true that the Haagens' 2016 report found elevated moisture levels in some locations, while the 2006 report found more instances of moisture. But under *Douglas*, the fact that Dale Haagen was on notice that the stucco defects existed prior to closing was enough to undermine reasonable reliance even though he was unaware of the full extent of the problems. *See* 173 Wn. App. at 834.

Because the Haagens were aware of elevated moisture problems with the stucco months prior to closing, the Haagens cannot establish reasonable reliance on the Form 17 Seller Disclosure

---

[1] We recognize that the parties raised arguments about contract language, specifically the integration clause and its import. None of the case law prevents this court or the trial court from considering the contract language as evidence when evaluating whether there was justifiable reliance. We need not decide whether the integration clause is dispositive.

Statement. The fraud, fraudulent concealment, and negligent misrepresentation claims regarding the stucco ultimately fail based on uncontested facts. The trial court was correct to grant summary judgment in favor of the Stenersens on this issue.

B.     Barn Permits

With regard to the permits necessary to promote the barn as a wedding venue, at Dale Haagen's suggestion the parties executed an addendum with an "as is" clause, which read, "Property to be sold 'AS IS' without seller representations or warranties, relative to potential wedding venue/barn issues regardless if they are known or unknown at the time of purchase." CP at 22. Dale Haagen reiterated in an e-mail that he would "accept the property 'as is.'" CP at 262. Dale Haagen admitted that he understood the barn lacked the proper permits necessary to host weddings prior to closing.

It is undisputed that the Haagens were aware before closing that the permit applications started by Deborah Stenersen in 2015 were nontransferable, and they were aware the barn still needed to be designated as a winery in order to host weddings. It is also undisputed that Dale Haagen and Curtis, a permit technician for Clark County, had a conversation prior to closing discussing that no permit for the barn had been issued.

Although Meidan Koti now argues Dale Haagen learned of the permit problems too late to recover his earnest money, he fails to explain why he could not have sought to recover his earnest money based on the same arguments he made later when seeking damages. Moreover, the Haagens have not pointed to any case where a court has concluded reliance was justified where a buyer knew of a defect before closing of the sale. The trial court did not err when it concluded that the lack of permits for using the barn as a wedding venue did not support Meidan Koti's claims.

In sum, we affirm the trial court's dismissal on summary judgment of Meidan Koti's fraud, fraudulent concealment, and negligent misrepresentation claims. Because the Stenersens prevail, we leave the attorney fee award in their favor undisturbed.

For the same reasons we conclude the trial court did not err in granting summary judgment as a matter of law, we conclude it did not abuse its discretion in denying reconsideration. Meidan Koti did not raise new or different arguments on reconsideration and the trial court was correct not to grant the motion.

CONCLUSION

We affirm the trial court's order granting summary judgment.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, C.J.

We concur:

Lee, J.

Price, J.

14