[No. 42256-5-II.   Division Two.   October 2, 2012.]

Matthew D. Austin, *Appellant*, v. Lance Ettl et al.,
*Respondents*.

David J. Britton (of Britton & Russ PLLC), for appellant.

Robert G. Casey and Chrystina R. Solum (of Eisenhower & Carlson PLLC), for respondents.

¶1 QUINN-BRINTNALL, J. — Matthew Austin appeals the trial court's CR 12(b)(6) dismissal of his negligent misrepresentation and unjust enrichment claims against Lance and Mandy Ettl arising from a dispute over the Ettls' disclosure of potential local improvement districts (LIDs)[1] on the property they sold to Austin.[2] Austin argues that his negligent misrepresentation claim for damages based on the Ettls' failure to disclose the cost of the proposed LIDs may proceed based on the independent duty doctrine and

---

[1] An LID is "a financial instrument that provides a long-term payment plan, with relatively low interest rates, which allows property owners to upgrade various infrastructure in their neighborhood. Such improvements may include: permanent street and alley paving; streetlight installation; sanitary sewer extensions; and the undergrounding of overhead utility wires in view-sensitive areas." Local Improvement Districts (LID), CITY OF TACOMA, http://www.cityoftacoma.org/Page.aspx?hid=1867 (last visited Sept. 18, 2012).

[2] Austin also argues that the trial court inappropriately treated the Ettls' CR 12(b)(6) motion as a motion for summary judgment. We do not address this claim as our independent review of the record reveals that it is entirely unfounded.

that both claims should have survived the Ettls' CR 12(b)(6) motion. We disagree.

¶2 Although the parties' confusion over the shifting sands of our Supreme Court's independent duty doctrine jurisprudence is understandable, we need not be caught up in the quagmire. This case is straightforward. As required by former RCW 64.06.020(1) (2009), the Ettls disclosed that potential LIDs were being considered on the property they sold to Austin. This disclosure contained no false information, and contrary to Austin's claims, the common law does not impose a duty on a seller to disclose the *likely* costs of *potential* encumbrances—particularly when no "special" relationship exists between the parties. Accordingly, we affirm the trial court's dismissal of Austin's claims because Austin failed to plead a prima facie case for either negligent misrepresentation or unjust enrichment. In addition, we award the Ettls statutory attorney fees.

## FACTS

¶3 On July 19, 2007, Austin executed a real estate purchase and sales agreement (REPSA)[3] for the purchase of the Ettls' Tacoma property. Mutual acceptance of the REPSA occurred on July 30, with a closing date set for August 24. On the closing date, the Ettls provided Austin with a real property transfer disclosure statement (Form 17),[4] disclosing the two proposed LIDs and their proposed LID numbers, but not the potential costs of each LID assessment. Austin did not request more information about the LIDs, nor did he request to extend the closing date; he signed the closing documents and concluded the purchase. Almost three months later, on November 13, the city of Tacoma approved the LIDs and assessed the LIDs' costs at over $40,000 against Austin's property.

---

[3] The Ettls submitted the REPSA to the trial court in a motion for attorney fees after the trial court ruled on the motion to dismiss. Accordingly, the trial court did not consider the REPSA's terms as part of the motion to dismiss.

[4] Austin did not include the disclosure form in the record on appeal.

¶4 On March 12, 2010, Austin sued the Ettls, alleging that the Ettls' disclosure of the proposed LIDs on the closing date and their failure to disclose the potential cost of the proposed LIDs amounted to negligent misrepresentation and resulted in unjust enrichment to the Ettls. Austin claimed damages in "the amount of [the LIDs] plus interest as charged by the City of Tacoma." Clerk's Papers (CP) at 14.

¶5 The Ettls filed a CR 12(b)(6) motion to dismiss Austin's suit for failure to state a claim for which relief could be granted, arguing in part that the "economic loss rule" barred Austin's negligent misrepresentation claim. CP at 20. And in their reply to Austin's response brief, the Ettls argued that even assuming the asserted facts in Austin's complaint were true, they met their duty to disclose because (1) they disclosed the LIDs' potential existence on the seller disclosure form as required by former RCW 64.06.020(1)[5] and (2) no independent tort duty required them to disclose the potential costs of the proposed LIDs.

¶6 The trial court granted the Ettls' motion to dismiss, reasoning that under our Supreme Court's analysis of "the interaction of tort damages . . . with contract damages" in *Eastwood v. Horse Harbor Foundation, Inc.*, 170 Wn.2d 380, 241 P.3d 1256 (2010) (plurality opinion), and *Alejandre v. Bull*, 159 Wn.2d 674, 153 P.3d 864 (2007), the "economic loss rule" barred Austin's negligent misrepresentation and unjust enrichment claims. Report of Proceedings at 6-7. Austin appeals.

---

[5] Former RCW 64.06.020(1) provides,

In a transaction for the sale of improved residential real property, the seller shall, unless the buyer has expressly waived the right to receive the disclosure statement under RCW 64.06.010, or unless the transfer is otherwise exempt under RCW 64.06.010, deliver to the buyer a completed [Form 17] in the following format and that contains, at a minimum, the following information:

. . . .

I. SELLER'S DISCLOSURES:

. . . .

. . . *H. Are there any pending or existing assessments against the property?

# DISCUSSION

## STANDARD OF REVIEW

¶7 We review de novo a trial court's CR 12(b)(6) dismissal of a cause of action. *San Juan County v. No New Gas Tax*, 160 Wn.2d 141, 164, 157 P.3d 831 (2007). To prevail, the moving party in a CR 12(b)(6) motion bears the burden to establish "beyond doubt that the claimant can prove no set of facts[ ] consistent with the complaint" that would justify recovery. *No New Gas Tax*, 160 Wn.2d at 164. And although a trial court must consider any hypothetical facts asserted by the complaining party when entertaining a motion to dismiss under CR 12(b)(6), a proffered hypothetical will only " 'defeat[ ] a CR 12(b)(6) motion if it is *legally sufficient* to support [a] plaintiff's claim.' " *Bravo v. Dolsen Cos.*, 125 Wn.2d 745, 750, 888 P.2d 147 (1995) (emphasis added) (quoting *Halvorson v. Dahl*, 89 Wn.2d 673, 674, 574 P.2d 1190 (1978)).

## NEGLIGENT MISREPRESENTATION

¶8 Austin argues that the trial court erred in granting the Ettls' motion to dismiss because the Ettls had an independent duty "to avoid negligent misrepresentation in one's business transactions by clarifying vague or incomplete disclosures." Br. of Appellant at 22. Because the common law does not require a seller of real property to disclose the *potential* cost of *proposed* encumbrances, this argument fails.

¶9 Washington law recognizes the tort of negligent misrepresentation.[6] *Haberman v. Wash. Pub. Power Supply*

---

[6] We note that the "Form 17" seller disclosure statement statute explicitly states that "[t]he seller disclosure statement shall be for disclosure only, and shall not be considered part of any written agreement between the buyer and seller of residential property." Former RCW 64.06.020(3). Thus, by the statute's express terms, a seller disclosure statement is not—contrary to the dissent's view—part of the real estate contract between the parties and the independent duty doctrine is not implicated. Any claims derived from possible defects in the disclosure such as

*Sys.*, 109 Wn.2d 107, 161-62, 744 P.2d 1032, 750 P.2d 254 (1987). A plaintiff claiming negligent misrepresentation

> must prove by clear, cogent, and convincing evidence that (1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages.

*Ross v. Kirner*, 162 Wn.2d 493, 499, 172 P.3d 701 (2007). Moreover, "[a]n omission alone cannot constitute negligent misrepresentation, since the plaintiff must justifiably rely on a misrepresentation." *Ross*, 162 Wn.2d at 499.

¶10 Here, Austin acknowledged in his complaint that the Ettls disclosed the potential LIDs. CP at 12 ("[The Ettls] waited until the August 24 closing had actually commenced before faxing [Austin] a completed Seller Disclosure Statement (Form 17). For the first time, [the Ettls] disclosed the existence of a Local Improvement District ("LID") affecting the property."). Thus, Austin does not actually assert that the Ettls provided him with false information. Instead, he takes issue with the Ettls' failure to disclose the potential *amount* of the LIDs, arguing that this omission constituted a negli-

---

Austin's, therefore sound in tort. In the context of disputes over real property contracts, Washington law has long endorsed the proposition that absent extraordinary circumstances, buyers and sellers allocate risk through contracts and, accordingly, aggrieved parties to real estate contracts must seek remedies sounding in contract, not tort. *See, e.g., Alejandre*, 159 Wn.2d at 687-89. In some instances, however, a party's actions may *negate* a contract, thereby making rescission and tort remedies appropriate. Fraud and misrepresentation are two such recognized instances and much of the Supreme Court's recent discussion of the independent duty doctrine necessarily relies on this long-standing common law jurisprudence. When a buyer defrauds a seller by making material misrepresentations in a contract, the contract itself is defective and this defect nullifies the contract—including possible remedies in the contract itself. *See, e.g.,* Restatement (Second) of Contracts § 164(1) (1981) ("If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient."). But again, the parties' REPSA is not at issue here and contract law is not implicated.

gent misrepresentation. This claim has no legal merit as Washington law does not impose a duty on a seller to disclose not-yet-extant encumbrances, and in any case, Austin's failure to research the potential costs of the proposed LIDs disclosed by the Ettls was entirely unreasonable.

¶11 In *Van Dinter v. Orr*, 157 Wn.2d 329, 331, 138 P.3d 608 (2006), our Supreme Court addressed an analogous situation: whether a seller of unimproved real property "had a duty to disclose whether a capital facilities rate could be imposed upon the property if developed."[7] In 2001, the Orrs "listed their vacant land for sale, noting that the land had a sewer system available." *Van Dinter*, 157 Wn.2d at 331. The Orrs did not disclose that to use the county's sewer system, building owners were required to pay a monthly capital facilities rate surcharge in addition to the sewer bill. The Van Dinters purchased the vacant land and began constructing an automobile dealership on it. *Van Dinter*, 157 Wn.2d at 331. After the Van Dinters connected their building to the county's sewer system, the "county issued a sewer inspection report" and shortly thereafter, the first monthly sewer bill including the monthly capital facilities rate. *Van Dinter*, 157 Wn.2d at 331. The Van Dinters sued the Orrs, arguing that they negligently misrepresented the property by "failing to disclose that the property was encumbered by the capital facilities rate." *Van Dinter*, 157 Wn.2d at 332.

¶12 The trial court "correctly concluded that the capital facility rate does not constitute an encumbrance on property unless the ratepayer fails to pay his or her sewer bill and the county files a lien on the property" and, further, that the "Orrs did not provide false information or misrepresent *existing* facts" and granted summary judgment to

---

[7] The capital facilities rate surcharge at issue in *Van Dinter* worked in a nearly identical fashion to the LIDs at issue in this appeal. In 1999, Spokane County enacted an ordinance authorizing the construction of a sewer system. *Van Dinter*, 157 Wn.2d at 331. The project was financed by adding a surcharge to sewer customers' monthly sewer bills for a 20-year period. *Van Dinter*, 157 Wn.2d at 331.

the Orrs. *Van Dinter*, 157 Wn.2d at 333 (emphasis added). Division Three of this court, in an unpublished decision, disagreed, believing that the Orrs "may, however, have negligently misrepresented the existence of the [capital facilities rate] by not disclosing it" because Washington has adopted the *Restatement (Second) of Torts* § 551 (1977), "Liability for Nondisclosure."[8] *Van Dinter v. Orr*, noted at 128 Wn. App. 1055, 2005 WL 1796965, at *2, 2005 Wash. App. LEXIS 1887, at *5, *rev'd in part*, 157 Wn.2d 329. Our Supreme Court rejected this reasoning.

¶13 In its per curiam decision, the *Van Dinter* court explained,

> The duty to disclose in a business transaction arises if imposed by a fiduciary relationship or other similar relationship of trust or confidence or if necessary to prevent a partial or ambiguous statement of facts from being misleading. *Colonial Imports* [*v. Carlton Nw., Inc.*], 121 Wn.2d [726,] 731, 853 P.2d 913 [(1993)]. In *Colonial Imports*, this court endorsed the notion that the duty arises when the facts are peculiarly within the knowledge of one person and could not be readily obtained by the other; or where, by the lack of business experience of one of the parties, the other takes advantage of the situation by remaining silent. *Id.* at 732. And the court quoted with approval from a Court of Appeals decision suggesting that the duty to disclose arises where there is a quasi-fiduciary relationship, where a special relationship of confidence and trust had developed between the parties, where a party relies on the specialized and superior knowledge of the other party, where a party has a statutory duty to disclose, or where a seller knows a material fact that is not easily discoverable by the buyer. *Id.* No such special relationship existed between the Van Dinters and the Orrs. The Van Dinters admitted that they knew the

---

[8] Similar to the Van Dinters' claims, Austin's complaint employs language from *Restatement* § 551, arguing that the Ettls had a duty to "disclose the cost of the LID, which [they] knew would be necessary to prevent [their] partial or ambiguous disclosure of the LID from misleading [Austin]." CP at 13-14. *Restatement* § 551(2) states that "[o]ne party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated . . . (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading."

sewer system had been recently constructed. They could easily have discovered that if they were to develop the property, a capital facilities rate would apply depending on the type of development.

The Orrs were entitled to dismissal of the negligent misrepresentation claim on summary judgment.

157 Wn.2d at 334.

¶14 This case is on all fours with *Van Dinter*. Here, as in *Van Dinter*, the amounts owed on the LIDs would not become an encumbrance absent a ratepayer failing to pay and the county reducing the amount to a lien. More important, at the time Austin purchased the property, the LIDs *did not yet exist*. Regardless, when a seller discloses potential encumbrances as required by statute, a buyer is not justified in failing to exercise due diligence after receiving the disclosure. Here, after receiving the Form 17, which indicated that two LIDs had been proposed along with their proposed LID numbers,[9] Austin needed only to contact the city of Tacoma to inquire about the potential cost of the LIDs. This information was easily discoverable[10] by Austin, and in addition, the Ettls (like the Orrs) did not have any kind of special or fiduciary relationship to Austin. Contrary to Austin's claims, the common law does not require a seller to disclose the potential cost of proposed encumbrances to a buyer with whom they have no special relationship.

¶15 Accordingly, the trial court did not err in granting the Ettls' CR 12(b)(6) motion to dismiss Austin's negligent misrepresentation claim.

---

[9] *See* "Defendants' Motion to Dismiss Pursuant to CR 12(b)(6)." CP at 20.

[10] The city of Tacoma, for instance, provides contact information for property owners concerned with potential LIDs. *See Local Improvement Districts (LID)*, CITY OF TACOMA, http://www.cityoftacoma.org/Page.aspx?hid=1867 (last visited Sept. 18, 2012). And a top return for a Google search of "City of Tacoma, LID No. 6979" directs the inquirer immediately to the publically available Tacoma City Council Minutes related to one of the two LIDs related to the Austin/Ettl property.

UNJUST ENRICHMENT

¶16 Austin also argues that the trial court should not have dismissed his unjust enrichment claim. Because the Ettls had no duty to disclose the potential costs of the not-yet-extant LIDs, this argument fails as a matter of law.

¶17 "Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008). A claim for unjust enrichment consists of three elements: (1) a plaintiff conferred a benefit upon the defendant, (2) the defendant had knowledge or appreciation of the benefit, and (3) the defendant's accepting or retaining the benefit without the payment of its value is inequitable under the circumstances of the case. *See Young*, 164 Wn.2d at 484 (quoting *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wn. App. 151, 159-60, 810 P.2d 12, 814 P.2d 699, *review denied*, 117 Wn.2d 1029 (1991)).

¶18 Here, the Ettls disclosed, as required by former RCW 64.06.020(1), that the property they were selling might become subject to future encumbrances. Further, they provided Austin with the potential LID numbers so that with the merest scintilla of effort he could have researched the potential costs of the LIDs. Neither the seller disclosure statute nor the common law required anything more of the Ettls. Accordingly, there was nothing "inequitable" about the Ettls' benefitting from Austin's languid approach to purchasing their home. The trial court did not err in summarily dismissing Austin's unjust enrichment claim.

CONCLUSION

¶19 The moving party in a CR 12(b)(6) motion bears the burden of establishing "beyond doubt that the claimant can prove no set of facts, consistent with the complaint," that would justify recovery. *No New Gas Tax*, 160 Wn.2d at 164.

Here, Austin failed to allege the necessary elements of a negligent misrepresentation claim or unjust enrichment claim in his complaint as the Ettls did not provide him with false information. As a matter of law, the Ettls did not have a duty to disclose the potential price of the not-yet-extant LIDs.

¶20 We affirm the trial court's dismissal of Austin's negligent misrepresentation and unjust enrichment claims. Moreover, we grant the Ettls statutory attorney fees and costs pursuant to RAP 18.1 and RCW 4.84.030 and .080(2).[11] Although Austin's claim is not frivolous in light of the confusion created by frequent shifts in Washington's independent duty doctrine jurisprudence, it is clearly without merit. Courts should not create remedies to protect consumers from their own failure to exercise due diligence and making bad decisions. Buyers, like Austin, must exercise common sense and due diligence to preserve a right to bring a real estate dispute before the court.

PENOYAR, J., concurs.

¶21 VAN DEREN, J. (dissenting) — I respectfully dissent. Based on our Supreme Court's recent holdings analyzing claims of negligent misrepresentation in real estate transactions,[12] I believe we are compelled to reverse the trial court's dismissal and remand for further proceedings based on the slim record here.

---

[11] The Ettls also request attorney fees pursuant to RCW 4.84.330, which allows parties to receive attorney fees when they are forced to enforce the provisions of a contract that has an attorney fee provision. Although the parties' REPSA has such a provision, the dispute that is the subject of this appeal involves the Form 17 disclosure statement. As we have previously stated above, this disclosure is not part of the parties' REPSA. Accordingly, the Ettls are not entitled to attorney fees stemming from the attorney fee provision of the REPSA.

[12] *Jackowski v. Borchelt*, 174 Wn.2d 720, 278 P.3d 1100 (2012); *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 273 P.3d 965 (2012); *Eastwood v. Horse Harbor Found., Inc.*, 170 Wn.2d 380, 241 P.3d 1256 (2010) (plurality opinion); *Alejandre v. Bull*, 159 Wn.2d 674, 153 P.3d 864 (2007).

I. STANDARD OF REVIEW

¶22 The majority holds that Austin does not adequately plead sufficient facts to sustain a negligent misrepresentation or unjust enrichment claim. We review de novo a trial court's CR 12(b)(6) dismissal of a cause of action. *San Juan County v. No New Gas Tax*, 160 Wn.2d 141, 164, 157 P.3d 831 (2007). To prevail, the moving party in a CR 12(b)(6) motion bears the burden to establish "beyond doubt that the claimant can prove no set of facts[ ] consistent with the complaint" that would justify recovery. *No New Gas Tax*, 160 Wn.2d at 164. "Such motions should be granted 'sparingly and with care' and only in the unusual case in which the plaintiff's allegations show on the face of the complaint an insuperable bar to relief." *No New Gas Tax*, 160 Wn.2d at 164 (quoting *Tenore v. AT&T Wireless Servs.*, 136 Wn.2d 322, 330, 962 P.2d 104 (1998)). "When an area of the law involved is in the process of development, courts are reluctant to dismiss an action on the pleadings alone by way of a CR 12(b)(6) motion." *Haberman v. Wash. Pub. Power Supp. Sys.*, 109 Wn.2d 107, 120, 744 P.2d 1032, 750 P.2d 254 (1987).

¶23 In reviewing a motion to dismiss under CR 12(b)(6), we accept the complaint's factual allegations as true. *Haberman*, 109 Wn.2d at 120. But we need not accept the complaint's legal conclusions as correct. *Haberman*, 109 Wn.2d at 120. Whether a duty exists in the negligence context is a question of law. *Aba Sheikh v. Choe*, 156 Wn.2d 441, 448, 128 P.3d 574 (2006).

II. REAL ESTATE TRANSACTION DUTIES

¶24 Austin argues that the trial court erred in granting the Ettls' motion to dismiss because the independent duty doctrine imposed duties beyond those arising under the REPSA (real estate purchase and sales agreement) and the applicable statutes. Austin alleges in his complaint that the Ettls misrepresented "an existing material fact that [they]

knew may [have] justifiably induce[d Austin] to refrain from purchasing the property" and, "before the purchase consummated," they failed to disclose the proposed LIDs (local improvement districts) and the cost of the LID assessments, "information which was not readily obtainable by [Austin]."[13] Clerk's Papers at 13.

¶25 The issue here is whether the facts alleged show, as a matter of law, that the Ettls owed Austin a duty independent of the REPSA or the applicable statutes that would entitle Austin to recover alleged damages through tort remedies. I would hold that on the pleadings the trial court considered, Austin stated a claim for negligent misrepresentation in the context of the REPSA and controlling statutes according to our Supreme Court's recent decisions, despite the fact that the Ettls revealed the LIDs' existence at a time when Austin had the statutory right to continue the closing or to later rescind the purchase, and, in doing so, the Ettls met their statutory obligation to reveal the existence of possible liens on "Form 17."[14] Accordingly, I would reverse the dismissal and remand for further proceedings.

## A. The Independent Duty Doctrine

¶26 Austin claims negligent misrepresentation by the Ettls. Generally, Washington law recognizes the tort of negligent misrepresentation. *Haberman*, 109 Wn.2d at 161-

---

[13] I find it troubling that Austin alleged that the Ettls did not reveal the LIDs' existence when it is undisputed that the Ettls revealed the LIDs' existence on the day of closing.

[14] Whether, when Form 17 is a part of real estate transactions by statute and when allegations of negligent misrepresentation and unjust enrichment are based on under-inclusion of information on Form 17, the form is part of the contract and/or subject to the independent duty doctrine is not resolved. The majority holds that it is not. My reading of our Supreme Court's recent decisions relating to real estate transactions causes me to conclude that it is.

The cost associated with LIDs imposed by local taxing districts is calculated based on the taxing district's analysis of the benefit to the property and property owner, thus it is not apparent that Austin could show that he suffered damages arising from the lien imposed for the LIDs here. RCW 35.44.010. But we cannot weigh the evidence when reviewing a CR 12(b)(6) motion. *No New Gas Tax*, 160 Wn.2d at 164.

62. Washington law also recognizes negligent misrepresentation claims based on a complete failure to disclose and partial, ambiguous, and misleading disclosures. *Van Dinter v. Orr*, 157 Wn.2d 329, 333-34, 138 P.3d 608 (2006); *Colonial Imps. v. Carlton Nw., Inc.*, 121 Wn.2d 726, 731-33, 853 P.2d 913 (1993). And, in *Eastwood*, our Supreme Court retroactively analyzed the independent duty doctrine as applied to the negligent misrepresentation claim in *Alejandre*. 170 Wn.2d at 389-90, 415-16 (Chambers, J., concurring). Accordingly, addressing the applicability of the independent duty doctrine to this tort claim arising in the real estate context does not conflict with our Supreme Court's recent directives in *Elcon Construction, Inc. v. Eastern Washington University*, 174 Wn.2d 157, 165, 273 P.3d 965 (2012).[15]

¶27 Because the parties and the trial court assumed that either the economic loss rule or the independent duty rule automatically applied in this case, I briefly discuss some of our Supreme Court's recent statements of the law relating to these rules. The law in this regard appears to be

---

[15] Our Supreme Court has directed Washington courts "not to apply the [independent duty] doctrine to tort remedies 'unless and until this court has . . . decided otherwise.'" *Elcon*, 174 Wn.2d at 165 (quoting *Eastwood*, 170 Wn.2d at 417 (Chambers, J., concurring)). The court has also stated that the lower courts should not reexamine public policy reasons for recognizing every tort duty of care when the independent duty doctrine is asserted; instead, the courts should inquire about duty only where our Supreme Court "has never explicitly held before that [the alleged] duty exists." *Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.*, 170 Wn.2d 442, 454 n.4, 243 P.3d 521 (2010) (plurality opinion); *see also Affiliated FM*, 170 Wn.2d at 461, 463 (Chambers, J., concurring) (generally stating that Washington courts should not reexamine the policy justifications for recognizing a duty when our Supreme Court has already established the alleged duty's existence).

The independent duty doctrine seems to fail its intended purpose of assisting practitioners and trial courts in determining whether a tort claim may exist when the parties have executed a contract or where statutes exist establishing duties and remedies with regard to the subject of the lawsuit. The economic loss rule was of some utility in this analysis in saying that where the losses claimed are *solely* economic, the contract likely controls. Under the independent duty doctrine, whether a tort exists paralleling or supplementing a contract has to be decided on a case by case basis after examining the facts of the case. If an independent tort duty does exist and the Supreme Court has not ruled on the fact situation, the trial court and parties are no closer to determining whether the contract or statutes prevail with regard to the duties owed. In these cases, forbidding the trial courts and intermediate appellate courts from developing answers unnecessarily delays clarification of the law with regard to tort claims in the contract context.

developing and, because I would hold that in this case the matter should return to the trial court for further proceedings, I only briefly address these recent opinions.

¶28 Our Supreme Court has reformulated the former "economic loss rule," a phrase it perceived to be a "misnomer," and renamed it the "independent duty doctrine." *Eastwood*, 170 Wn.2d at 387; *Elcon*, 174 Wn.2d at 165. Overall, cases explaining the independent duty doctrine seem to indicate that claims and alleged damages arising from a contractual relationship, even those executed at arm's length, are subject to a tort sieve. In applying the independent duty doctrine to a leasehold interest, the *Eastwood* lead opinion[16] explained:

> An injury is remediable in tort if it traces back to the breach of a tort duty arising independently of the terms of the contract. The court determines whether there is an independent tort duty of care, and "[t]he existence of a duty is a question of law and depends on mixed considerations of logic, common sense, justice, policy, and precedent." . . . When no independent tort duty exists, tort does not provide a remedy.

*Eastwood*, 170 Wn.2d at 389 (internal quotation marks omitted) (quoting *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wn.2d 233, 243, 35 P.3d 1158 (2001)). But at the same time, our Supreme Court has said, " '[B]ased upon policy

---

[16] Three justices signed the *Eastwood* lead opinion. 170 Wn.2d at 402. Four justices concurred and agreed with the lead opinion on most points except, perhaps, its discussion of proximate cause. *Eastwood*, 170 Wn.2d at 417-18 (Chambers, J., concurring). Thus, we treat the *Eastwood* lead opinion, except possibly its discussion of proximate cause, as binding law in this state. Two other justices concurred in the result, criticizing the lead opinion's independent duty doctrine analysis as "incorrectly stat[ing] a general rule of law that does not accord with our cases on the economic loss rule." *Eastwood*, 170 Wn.2d at 406 (Madsen, J., concurring). These justices would have held only that "[t]he economic loss rule should not be applied to bar a statutory cause of action, here the statutory cause of action for waste." *Eastwood*, 170 Wn.2d at 406 (Madsen, J., concurring).

Austin's case does not conflict with the concurrence's concern in *Eastwood* regarding the availability of statutory remedies. Although RCW 64.06.030 and former RCW 64.06.040(3) (2009) provide rescission as a remedy for the conduct complained of by Austin, former RCW 64.06.070 (1996) provides, "[N]othing in this chapter shall extinguish or impair any rights or remedies of a buyer of real estate against the seller . . . existing pursuant to common law."

considerations unique to [the real estate and construction] industries[, w]e have never applied the doctrine as a rule of general application outside of these limited circumstances.' " *Elcon*, 174 Wn.2d at 165 (quoting *Eastwood*, 170 Wn.2d at 416 (Chambers, J., concurring)). Accordingly, I view our Supreme Court's application of the independent duty doctrine in dealing with a negligent misrepresentation claim in the contractual real estate purchase context as applicable here.

### B. *Alejandre*

¶29 The Alejandres purchased a home from Bull. *Alejandre*, 159 Wn.2d at 677-78. They later sued Bull for negligent misrepresentation, claiming that Bull failed to disclose a defective septic system. *Alejandre*, 159 Wn.2d at 677, 686. In reinterpreting *Alejandre*, the *Eastwood* court stated that the issue was "whether Bull owed [the Alejandres] a 'duty of care under the *Restatement (Second) of Torts* § 552 (1977),' which is the duty to use ordinary care in obtaining or communicating information during a transaction." 170 Wn.2d at 389 (quoting *Alejandre*, 159 Wn.2d at 686).

¶30 Recasting this question in terms of the independent duty doctrine, the *Eastwood* court's lead opinion further stated, "[T]he core issue was whether Bull, as the home seller, was under a tort duty independent of the contract's terms." 170 Wn.2d at 389-90. It reasoned:

> The contract between Bull and the Alejandres contained ample disclosures about the home; the Alejandres agreed that "[a]ll inspection(s) must be satisfactory to the Buyer, in the Buyer's sole discretion," [*Alejandre*, 159 Wn.2d] at 678 (alteration in original) [(internal quotation marks omitted)]; the Alejandres acknowledged "their duty to pay diligent attention to any material defects which are known to Buyer or can be known to Buyer by utilizing diligent attention and observation," [*Alejandre*, 159 Wn.2d] at 679 [(internal quotation marks omitted)], and the Alejandres had their own inspection done.

*With significant information communicated about the home in the course of contractual negotiations, Bull had no independent tort duty to obtain or communicate even more information during a transaction.* The contract sufficed, and the Alejandres' negligent misrepresentation claim did not survive.

*Eastwood,* 170 Wn.2d at 390 (emphasis added); *see also Eastwood,* 170 Wn.2d at 415-16 (Chambers, J., concurring) ("In *Alejandre,* the parties had, in essence, by agreement, modified the duty to disclose imposed by law. This court relied upon the independent duty doctrine as an analytical tool to support its conclusion that *given the detailed contractual terms covering the sale of the house and the duties of the buyer to inspect, the seller did not have an independent duty to the buyer under the tort theory of negligent misrepresentation.*"[17] (emphasis added)).

---

[17] Justice Chambers's concurrence in *Alejandre* also examined the contract's terms:

> *While negligent misrepresentation may sound in tort, in this case, the claim falls under the contract these parties signed.* The remedies available to the parties are controlled by the contract between the parties.
>
> *Turning briefly to whether there is potential relief in contract,* under the inspection addendum to the contract, the Alejandres were authorized to inspect the septic system and required to notify Bull if they found it unsatisfactory within 10 days. Fairly read, that contractual language put a duty of due diligence on the Alejandres to take steps to protect themselves and to anticipate that Bull might not have complete knowledge of the workings of an underground system. *Cf.* ex. 5 ("Buyer acknowledges the duty to pay diligent attention to any material defects which are known to Buyer or can be known to Buyer by utilizing diligent attention and observation."). Thus, it was the Alejandres' duty, under the [REPSA], to exercise due diligence and to satisfy themselves that the septic system was acceptable. If, upon a reasonably diligent inspection, they discovered the septic system was not in good working order, their remedy under the [REPSA] was to rescind the contract or seek other contract remedies.

159 Wn.2d at 697-98 (most emphasis added) (citation omitted). Thus, the lead opinion and Justice Chambers's concurrence in *Eastwood* rely on the *Alejandre* concurrence's analysis of whether the Alejandres had *contractual* remedies under the contract's terms in order to explain the absence of tort remedies *independent* of the contract. This explanation seems inherently contrary to the independent duty doctrine explanations elsewhere in the opinions addressing this doctrine: "An injury is remediable in tort if it traces back to the breach of a tort duty arising *independently of the terms of the contract.* The court determines whether there is an independent tort duty of care." *Eastwood,* 170 Wn.2d at 389 (emphasis added).

¶31 The Alejandres also sued for fraudulent concealment. *Alejandre*, 159 Wn.2d at 689. Our Supreme Court held that such a claim could go forward under either the independent duty doctrine or the former economic loss rule, although the Alejandres failed to present sufficient evidence supporting a fraudulent concealment claim. *Eastwood*, 170 Wn.2d at 390 (independent duty doctrine); *Alejandre*, 159 Wn.2d at 689 (economic loss rule). Here, similar to the facts in *Alejandre*, Austin may proceed under the independent duty doctrine, with the success or failure of his claim depending on the sufficiency of his evidence to show the existence of an independent duty in light of the controlling contract language—Form 17's contents—and the controlling statutes.

## C. *Jackowski v. Borchelt*

¶32 Our Supreme Court recently decided *Jackowski v. Borchelt*, 174 Wn.2d 720, 724, 278 P.3d 1100 (2012), dealing with a real estate purchase and sale involving property that suffered a landslide following the sale. The purchaser sued multiple parties, including the seller, and the trial court entered summary judgment on several claims for differing parties. *Jackowski*, 174 Wn.2d at 724. In discussing whether summary judgment was properly granted on both fraud and fraudulent concealment claims, the court stated:

> After our decision in *Eastwood*, the Court of Appeals' reliance on the economic loss rule is in error. Because the duty to not commit fraud is independent of the contract, the independent duty doctrine permits a party to pursue a fraud claim regardless of whether a contract exists. *See Eastwood*, 170 Wn.2d at 390. The same is true for a claim of negligent misrepresentation, *but only to the extent the duty to not commit negligent misrepresentation is independent of the contract.*

*Jackowski*, 174 Wn.2d at 738 (emphasis added).

---

Nonetheless, our Supreme court's position is that *Alejandre* was decided correctly and remains good law.

¶33 It appears the phrase "the same is true" applies to the existence of an *independent* claim for negligent misrepresentation in the contract setting once a duty is established. *See Jackowski,* 174 Wn.2d at 738. Thus, the trial court must examine the facts in each case and determine whether a tort duty exists in addition to the contractual and statutory requirements, making such a CR 12(b)(6) dismissal motion rarely appropriate because of the breadth and intensity of the required factual inquiry by the trial court.

¶34 Here, the record on appeal does not contain Form 17, the disclosure form, making it a matter outside the pleadings, and Austin claims that the Ettls had a duty independent of the REPSA to disclose the possible lien amounts. This allegation is grounded in facts that are outside the pleadings and await development and cannot serve as a basis for dismissing claims under CR 12(b)(6).

¶35 Accordingly, I would hold that the trial court erred in dismissing Austin's negligent misrepresentation claim under CR 12(b)(6).[18]

III. Unjust Enrichment

¶36 Austin also argues that the trial court erred in dismissing his unjust enrichment claim because he alleged facts sufficient to state a claim for relief. Again, I would agree.

¶37 "Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Young v. Young,* 164 Wn.2d 477, 484, 191 P.3d 1258 (2008). A party claiming unjust enrichment must prove three elements: "(1) the defendant receive[d] a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the

---

[18] This holding would not foreclose a CR 56 motion for summary judgment during further proceedings before the trial court. *Singleton v. Naegeli Reporting Corp.,* 142 Wn. App. 598, 602 n.2, 175 P.3d 594 (2008).

circumstances ma[d]e it unjust for the defendant to retain the benefit without payment." *Young*, 164 Wn.2d at 484-85.

¶38 Here, Austin alleged that the Ettls failed to timely inform him of the known potential LIDs and LID assessments against his property, the benefit to the Ettls retained at his expense equals the subsequent assessments against his property, and the Ettls' retention of this benefit was unjust. Whether evidence supporting these allegations of an unjust benefit to the Ettls exists remains an issue of fact that could not be resolved on a CR 12(b)(6) motion. Whether Austin can show sufficient evidence of the elements of unjust enrichment could be decided on remand.

¶39 Because our Supreme Court has directed that the independent duty doctrine applies in real estate transactions, I would reverse dismissal of Austin's claims and remand for further proceedings.