**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

**FILED**

FOR THE NINTH CIRCUIT

AUG 28 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MULTICARE HEALTH SYSTEM, d/b/a MultiCare Good Samaritan Hospital, <br><br> Plaintiff - Appellant, <br><br> v. <br><br> LEXINGTON INSURANCE COMPANY, a Delaware corporation; et al., <br><br> Defendants - Appellees. | No. 12-35436 <br><br> D.C. No. 3:12-cv-05043-BHS <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted July 12, 2013
Seattle, Washington

Before: KLEINFELD, M. SMITH, and N.R. SMITH, Circuit Judges.

Medical Staffing Network contracted with Multicare Health System ("the

hospital") to provide the hospital with temporary nursing staff. Pursuant to that

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

contract, Medical Staffing gave the hospital a Certificate of Liability Insurance issued on behalf of Lexington Insurance Company ("Lexington"), by USI Insurance Services, LLC, and USI Holdings (collectively "USI"). The Certificate stated that Medical Staffing had a professional liability insurance policy that provided up to $5 million of coverage. It did not state, however, that the professional liability policy was subject to a $1 million self-insured retention.

The hospital sued Lexington and USI, alleging that the failure to include the $1 million self-insured retention on the Certificate was a material misrepresentation on which the hospital relied to its detriment. The hospital became liable for a $785,000 malpractice award, that resulted from a 2008 suit against a Medical Staffing nurse on contract with the hospital. The award was within Medical Staffing's self-insured retention, but Medical Staffing went bankrupt and did not pay it.

The district court dismissed the hospital's claims, but allowed supplemental briefing on whether the hospital should be given leave to amend its complaint. After reviewing that briefing, the district court dismissed the complaint with

prejudice, concluding that "any amendment would be futile." The hospital appeals.

I.

We review de novo the district court's grant of a motion to dismiss, and may affirm on any ground supported by the record. Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1159 (9th Cir. 2012). We consider only the complaint itself and the Certificate of Insurance Liability, which was attached to the complaint as an exhibit. See Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1030–31 (9th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted).

The hospital's complaint alleges that defendants harmed the hospital when they breached their duty "to not misrepresent the terms of an insurance policy" and "made [a] material misrepresentation by not including the $1 Million [self-insured retention] on the Certificate of Insurance." Under Washington law, a defendant is

liable for negligent misrepresentation when it 1) makes an affirmative misrepresentation or 2) negligently fails to disclose information when it has a duty to do so. Van Dinter v. Orr, 138 P.3d 608, 609–10 (Wash. 2006).

The complaint does not contain sufficient facts to state a claim for affirmative misrepresentation. It does not claim that any information contained in the Certificate is false; it simply alleges that the self-insured retention should have been included and was not.

Nor does the complaint contain sufficient facts to state a claim for negligent failure to disclose information. Under Washington law, a duty to disclose information arises "if imposed by a fiduciary relationship or other similar relationship of trust or confidence or if necessary to prevent a partial or ambiguous statement of facts from being misleading." Van Dinter, 138 P.3d at 610. "The existence of a duty is a question of law." Colonial Imports, Inc. v. Carlton Northwest, Inc., 853 P.2d 913, 916 (Wash. 1993).

Here, defendants were not in a fiduciary or quasi-fiduciary relationship with the hospital. They were not in any relationship with the hospital at all. They

issued a Certificate of Liability Insurance to Medical Staffing, not the hospital. Medical Staffing gave the Certificate to the hospital as proof that it had insurance. The complaint alleges no facts indicating that including the self-insured retention on the Certificate was necessary to prevent a partial statement of facts from being misleading. "We need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." Manzarek, 519 F.3d at 1031. The Certificate is a one-page form document, the heart of which is a table summarizing Medical Staffing's insurance policies by listing in separate columns each policy's insurance type, policy number, policy effective date, policy expiration date, and policy limits. There is no column for retention amount or deductible. Anyone with medical, auto, homeowners, commercial or other liability or casualty insurance knows that many policies have deductibles and self-insured floors below which there is no coverage. The Certificate expressly states that "the insurance afforded by the policies described herein is subject to all the terms, exclusions and conditions of such policies" and that the Certificate is "issued as a matter of information only."

We do not believe that the Washington Supreme Court would find a duty to disclose a self-insured retention amount on a certificate that summarizes insurance

policies and does not contain a column for retention or deductible amounts. This is especially true in light of the fact that the hospital could have asked Medical Staffing for a copy of its insurance policy. See Van Dinter, 138 P.3d at 610 (explaining that the duty to disclose arises "when the facts are peculiarly within the knowledge of one person and could not be readily obtained by the other; or where, by the lack of business experience of one of the parties, the other takes advantage of the situation by remaining silent."); Austin v. Ettl, 286 P.3d 85, 90–91 (Wash. Ct. App. 2012) (affirming a trial court's dismissal of a negligent failure to disclose claim in part because the "information was easily discoverable by [plaintiff] and, in addition, [defendants] did not have any kind of special or fiduciary relationship to [plaintiff]."); see also Travelers Prop. Cas. Co. of Am. v. Superior Court, 155 Cal. Rptr. 3d 459, 477 (Ct. App. 2013) ("A certificate of insurance is merely evidence that a policy has been issued; it identifies the types of policies issued, the dates of coverage and the dollar limits of coverage. The document is not intended to inform the certificate holder of every, or any, limitation on or exclusion from coverage, and no broker can be liable for failing to include such information in a certificate of insurance.") (footnote omitted); Benjamin Shapiro Realty Co. v. Kemper Nat'l Ins. Cos., 756 N.Y.S.2d 45, 46 (App. Div. 2003) ("[W]here, as here, certificates of insurance contain disclaimers that they are for information only, they

-6-

may not be used as predicates for a claim of negligent misrepresentation."). If defendants had a duty to disclose retentions, exclusions, and all policy terms that a third party could conceivably rely upon when issuing a certificate of insurance, certificates would essentially be transformed into copies of insurance policies, and would lose their value as succinct statements of the existence of insurance. See Postlewait Constr., Inc. v. Great Am. Ins. Cos., 720 P.2d 805, 807 (Wash. 1986) ("[T]he purpose of issuing a certificate of insurance is to inform the recipient thereof that insurance has been obtained; the certificate itself, however, is not the equivalent of an insurance policy.").

For the reasons stated above, the district court was correct to dismiss the hospital's misrepresentation claim. The hospital's other claims for bad faith, violations of Washington insurance regulations, and violation of Washington's Consumer Protection Act, were dependent upon its misrepresentation claim, so the district court was correct to dismiss those claims as well. The hospital's breach of the duty of care claim is essentially a restatement of its negligent misrepresentation claim. Even if the independent duty doctrine as articulated in Affiliated FM Insurance Co. v. LTK Consulting Services, Inc., 243 P.3d 521 (Wash. 2010) applies, the only duty arising out of "ordinary tort principles," and the only duty

-7-

argued by the hospital in its brief on appeal, is the same duty at issue in the hospital's negligent misrepresentation claim – the duty to disclose information. There was no misrepresentation, no fiduciary duty, no privity, and no other basis pleaded for a duty to disclose the self-insured retention provisions of the policy, so we need not reach the question of whether reliance was unreasonable as a matter of law. Cf. Barnes v. Cornerstone Invs., Inc., 773 P.2d 884, 886 (Wash. Ct. App. 1989).

## II.

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). The hospital argues that it can amend its complaint to state sufficient facts and theories to make out a negligent misrepresentation claim. But none of the new facts or theories pressed by the hospital plausibly state or allow us to infer that it justifiably relied on the Certificate or that the defendants had a duty to include the self-insured retention amount to keep the Certificate from being misleading.

We do not see how the complaint could plead a claim even with the amendments the hospital might make.

The hospital says that if it were allowed leave to amend, it would claim that the defendants made an affirmative misrepresentation, because they should have put Medical Staffing's professional liability policy into the "excess/umbrella liability" row on the Certificate. This row includes a blank for retention amount, and the hospital claims that the defendants should have used this blank to state that the professional liability policy was subject to a $1 million self-insured retention. Medical Staffing already had an excess liability policy listed on its Certificate, but the professional liability policy at issue was not an excess or umbrella policy. It provided the first layer of coverage. Excess and umbrella policies provide layers of coverage on top of the first layer. The self-insured retention is not a first layer of insurance. See Bordeaux, Inc. v. Am. Safety Ins. Co., 186 P.3d 1188, 1192 (Wash. Ct. App. 2008) ("Washington courts have rejected the argument that self-insurance constitutes 'insurance.'").

The hospital says that industry standards control here, rather than Washington law, and points us to a declaration from an insurance consultant.

However, the consultant merely offers conclusory statements, unsupported by any facts or examples. See Pillsbury, Madison & Sutro v. Lerner, 31 F.3d 924, 928 (9th Cir. 1994) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." (quoting McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988))); see also Iqbal, 556 U.S. at 679–81. Nor does the expert's declaration address the question of whether the hospital was justified in relying upon the Certificate rather than asking for a copy of Medical Staffing's professional liability policy.

We respectfully disagree with our dissenting colleague's view that the self-insured retention endorsement might be pleaded as an "exclusion" that should have been in the "description of operations/locations/vehicles/exclusions added by endorsement/special provisions" box. Kyrkos v. State Farm Mutual Automobile Insurance Co., 852 P.2d 1078, 1081 (Wash. 1993) addressed exclusions in uninsured motorist coverage, not endorsements adding deductibles or self-insured retentions. The endorsement itself states that it amends the policy by replacing the section entitled "Deductible" with the self-insured retention provision.

The hospital also attempts to bolster its negligent failure to disclose claim by saying that if it were allowed leave to amend, it would claim that third parties frequently rely upon certificates of insurance in the course of their business transactions with insureds without asking to see the underlying policies, that defendants knew that a $1 million self-insured retention is unusually high in the nurse staffing business, and that certificate issuers should know that certificate recipients rely upon certificates. These claims, though, would not establish a duty under Washington law to disclose a self-insured retention on a one-page certificate that has no column in which to include retention or deductible amounts.

The hospital has not put forward any argument that would save its complaint from dismissal. The district court's orders dismissing the hospital's claims and denying leave to amend are AFFIRMED.

-11-

*Multicare Health v. Lexington Ins. Co.*, 12-35436

**N.R. SMITH**, Circuit Judge, concurring in part and dissenting in part:

I only write to address the negligent misrepresentation by omission claim. This claim was insufficiently pleaded in the hospital's original complaint. However, amendment of this claim would not be futile, because the hospital's proposed amendments allege sufficient facts to state a claim. Accordingly, the district court abused its discretion in denying leave to amend and dismissing this claim with prejudice. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Otherwise, the majority "got it right."

Under Washington law, a plaintiff may state a negligent misrepresentation by omission claim based on a duty to disclose where disclosure is "necessary to prevent a partial or ambiguous statement of facts from being misleading." *Van Dinter v. Orr*, 138 P.3d 608, 610 (Wash. 2006).[1] First, the district court improperly conflated the question of whether the disclosure of the self-insured retention was necessary to prevent a partial or ambiguous statement of fact with whether information about the self-insured retention was easily obtainable. These

_____

[1] Although the district court cited the "clear, cogent, and convincing" evidentiary standard for negligent misrepresentation claims, I note that the proper question for resolving a motion to dismiss is whether the hospital alleged sufficient facts to state a claim plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

1

are distinct theories under which a plaintiff may allege a duty to disclose, one does not preclude the other. *See id.*

Second, in noting that disclosure of the $5 million limit of liability was not a partial or ambiguous statement, the district court misconstrued the nature of the hospital's claim. The hospital's negligent representation by omission claim alleges that the $1 million self-insured retention should have been disclosed on the face of the insurance certificate (not that the $5 million liability limit was somehow erroneous). Specifically, the hospital alleges that, because the self-insured retention was added to the policy by an endorsement, it should have been disclosed in the space designated for "Exclusions Added by Endorsement / Special Provisions." *See also Kyrkos v. St. Farm Mut. Auto. Ins. Co.*, 852 P.2d 1078, 1081 (Wash. 1993) (describing self-insured retention provision as an "exclusion"). The hospital further alleges that this omission "violated industry standards and misrepresented the coverage offered under the Lexington policy by failing to indicate the self-insured retention which was, under the terms of the policy, an 'exclusion added by endorsement' and/or a 'special provision.'"

I am mindful of the broad disclaimers contained on the front and back of the certificate. While the disclaimers indicate that there are applicable terms and conditions not found on the insurance certificate, the disclaimers do not suggest

2

that a holder of the certificate cannot assume the accuracy of the standardized information that *is* provided (e.g., the existence of an insurance policy, the stated amount of liability coverage). The same should be true where space for a standardized term is left blank. For example, if the "Automobile Liability" box is blank, the holder of the certificate would assume the covered party has no automobile liability insurance.

As the majority notes, an insurance certificate and its corresponding limited disclosure space surely cannot be expected to list every term and condition of every policy. *See* Mem. Dispo. at 7. However, where the form standardizes the information to be disclosed and a standardized disclosure is omitted, it seems plausible that this type of partial or ambiguous statement of fact could become misleading. The majority rejects the hospital's use of this theory based on the assumption that the insurance certificate "has no column in which to include retention or deductible amounts." Mem. Dispo. at 10-11. If, however, the industry practice is to include the amount of a self-insured retention in the space designated for "Exclusions Added by Endorsement / Special Provisions," then the majority's assumption is incorrect.

Therefore, a factual question exists at this stage of the proceedings regarding whether industry standards mandate that a $1 million self-insured retention added

3

by endorsement should appear in the space designated for "Exclusions Added by Endorsement / Special Provisions."  Because the hospital so alleges in its proposed amended allegations, and because factual allegations are to be taken as true at the motion to dismiss stage, I would allow the hospital to proceed on its negligent misrepresentation by omission claim under this theory.

Of course, if Defendants can show that industry practice is to the contrary (i.e., this box is not used in such a manner, or a self-insured retention is never so disclosed), then the hospital's claim may not survive summary judgment.  At this early stage, however, the hospital need only provide plausible factual allegations, not evidence to prove the merits of its claim.  *See Twombly*, 550 U.S. at 570.

The district court dismissed the bad faith, Consumer Protection Act, statutory claims, and the independent duty doctrine claim as a result of its holding that the hospital failed to allege a negligent misrepresentation claim.  Because I find that the negligent misrepresentation by omission claim would be sufficiently pleaded as amended, I would allow amendment and remand consideration of these claims to the district court for further proceedings.  On remand, the district court could also address standing in the first instance.