IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DIAMOND ASPHALT PAVING, INC, a Washington corporation, | ) ) ) | No. 40419-6-III |
| Respondent, | ) ) | |
| v. | ) ) | |
| JONATHAN D. CLAUSEN and JODI CLAUSEN, husband and wife, and all other persons or parties unknown claiming any right, title, interest or lien or estate in real estate described in the Complaint herein, | ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Appellants. | ) ) ) | |

FEARING, J. — Diamond Asphalt Paving, Inc. (Diamond) sues homeowners Jonathan and Jodi Clausen for a debt incurred when constructing a sport court for the Clausens. The Clausens responded with a counterclaim for breach of the construction contract. The superior court granted Diamond summary judgment on the debt and dismissed the Clausens' counterclaim. On appeal, we reverse the trial court. We conclude that genuine issues of relevant facts exist as to whether Diamond breached its contract with the Clausens.

FACTS

We view the facts in a glow favorable to appellants Jonathan and Jodi Clausen. The Clausens own and reside together in a home in Spokane. They wished for the addition of a sport court on their property. Alleged defects in the construction of the sport court lie at the center of this appeal.

Jonathan and Jodi Clausen hired Stoltz, Inc. (Stoltz) as the earthwork contractor for the sport court project. Under the parties' contract, Stoltz's work encompassed earth movement, grading, and placement of crushed rock as the final subgrade for the athletic court. Stoltz informed the Clausens it would grade the sport court with a 1-to-2-percent slope to the west. Stoltz began work on June 15 and ended on June 29, 2021.

At some unknown time, but prior to the end of June 2021, Jonathan and Jodi Clausen contacted Diamond Asphalt Paving about paving the sport court. On a bid proposal dated June 23, Diamond offered to install the asphalt pavement with the scope of its work to be:

> Court Area: We will provide/place the 4" of compacted base rock
> Court Area: We will kill and provide/place the 2" of commercial hot mix asphalt
> Driveway Area: We will provide/place the 4" of compacted base rock
> Driveway Area: We will weed kill and provide/place 2.5" of commercial hma [hot mix asphalt]
> . . . .
> This is based on one mobilization. Subgrade to be ready/approved

2

> for rock prior to our mob[ilization]
>        Exclusions: permits, fees, bonds, testing,
> engineering/surveying/staking, sawcutting [sic], traffic control, inspections,
> utility adjustments, patching, joint adhesive/sealant, and prevailing wages.
>
>             "Specializing in Quality and Service"
>               One Year limited Warranty
>
>        *All material is guaranteed to be as specified. All work to be
> completed in a substantial workmanlike manner according to specifications
> submitted, per standard practices* subject to changes necessitated by
> physical condition or acts of [G]od. Any alteration or deviation from above
> specifications involving extra costs will be executed upon written orders
> and will become an extra charge over and above the estimate. Drainage
> warranty only applies with minimum of 2% grade. If job size increases,
> billing will be on finished square feet. A $450.00 charge will be added to
> all accounts that have to be liened due to non-payment.

Clerk's Papers (CP) at 115 (alterations added). On either June 27 or June 29, 2021,

Jonathan Clausen signed Diamond's June 23 bid proposal totaling $39,716.58.

For purposes of constructing a sports court, "fill" comprises the dirt lying at the

bottom or base layer of the court. The next layer, the middle layer, consists of crushed

rock. Finally, asphalt comprises the top layer.

When, on August 1, 2021, Diamond's superintendent, Guy Anderson, arrived on

the Clausens' property, he observed that Stoltz had laid insufficient crushed rock for

Diamond to pour asphalt. The rock placed by Stoltz did not cover the entire sport court

area. The edges of the athletic court sloped downward such that Diamond needed to lay

additional rock in some areas to create a suitable flat subgrade for paving.

On August 2, 2021, Diamond Asphalt Paving began work. Before performing its contractual obligations, Diamond applied previously utilized rock and imported additional crushed rock to raise the sport court area to paving grade. In summarizing the additional work Diamond performed for the Clausens, Kim Long, a job superintendent for Diamond, wrote to Jonathan Clausen on August 18:

> [Project superintendent Guy Anderson] indicated that his visual assessment was that the subgrade work done prior to our mobilizing to the job was not correct. With this info, we spoke to you about *using our grading expertise* to find out the best way to determine the most cost-effective way to correct the existing drainage. After *we engineered the site*, we felt that we could try to grade all of the base rock we could into an area to save/re-use it and re-subgrade the subgrade for shape/drainage or add some additional base rock to the south side of the court so as to create the desired drainage that you wanted. *We brought out the necessary equipment, labor and materials* and performed the work. We ended up charging for this extra work.

CP at 126 (emphasis added). Diamond charged Jonathan and Jodi Clausen $2,633.76 for this extra grading work.

Diamond Asphalt Paving finished the paving project on August 9, 2021. On August 12, Diamond delivered to the Clausens an itemized invoice, for the total amount of $42,350.34, the original bid of $39,716.58 plus the extra cost of $2,633.76.

According to Jonathan and Jodi Clausen, on September 11, 2021, the sport court failed due to heavy rain, a failure they described as seepage like the Grand Canyon. Dirt and rocks oozed from under the north side of the court. The Clausens asked Diamond to

fix the sport court. Diamond refused and demanded payment under the contract. On November 5, 2021, Diamond filed a lien against the Clausens' property.

As a result of the deteriorating sport court, Diamond Asphalt Paving hired Benjamin Vance, an engineer employed with Liberty Geotechnical Engineers, Inc., to perform a forensic evaluation and geotechnical investigation report for the Clausens' project. Vance wrote an extensive report based on his evaluation. Vance wrote in his report:

> Inadequate base rock was observed below the asphalt section. Base rock is critical to supporting the flexible asphalt surface and providing adequate drainage. Approximately ½ inch to 1½ inches of basecourse was encountered during the subsurface exploration. The base rock observed was not adequately fractured. It was found to be mixed with clay, sand, and rounded gravel.

CP at 50. Vance also wrote:

> The Courts and Recreational Surfaces Construction and Maintenance Manual, written by the American Sports Builders Association, is a detailed design, construction and maintenance manual. Within Chapter 4 is a section titled *Soil Conditions*. The following statement is made, "It is essential to determine whether the soil in the area is suitable for the project." Also, the manual states, "Soil testing and analysis, as well as design recommendations, should be completed by a licensed geotechnical (soils) engineer familiar with local conditions and knowledgeable about the sports facility design."

CP at 52. Vance added:

2. The clay and clayey sand were not adequately compacted . . . The percent compaction is less than 81.5 percent. Generally, embankment fill should be compacted to at least 92 percent of the modified Proctor.

3. In addition, Standard Penetration Test (SPT) blow count (N) indicated that the soil was not compacted during construction. SPT blow counts can be correlated to density and compactive effort. The SPT blow count of compacted fill would generally be greater than 15. The average SPT blow count measured in the field was 4.5 (excluding the sample driven through a boulder).

4. A void of approximately 28.5 inches was noted below the asphalt pavement at BH-1. Extensive settlement and erosion are likely to have caused the void.

5. A minimal amount of base rock was observed below the asphalt pavement section. Pavement should be supported by base rock to ensure water infiltrating through the pavement can drain away from the surface. Improper drainage will cause premature degradation of the asphalt. Also, the base rock provides support to the asphalt. Although the loads on a sports court are not high, any incidental vehicular traffic will cause the asphalt section to fail. The observed rutting failure of the sports court was likely caused by the lack of base rock support.

6. The moisture content of the soil was high based on laboratory testing of the soil samples. The optimum moisture content based on laboratory testing was approximately 9.2 percent. Moisture content higher than optimum hinders compaction during construction. Using sprinklers overnight to add moisture during construction is not typically performed and is likely the cause of the high moisture content. Additional settlement may occur as the moisture content of the soil goes down. Further settlement will cause more distress in the asphalt pavement.

7. The measured pavement thickness exceeded the recommended minimum thickness recommended by the American Sports Builders Association.

However, the engineering, material testing, and construction methodology were not performed for the fill and base rock to support the asphalt pavement section.

CP at 53. Vance further wrote:

The asphaltic pavement for the court appeared to be gently sloping to the north. The slope around the edge of the court was sloped at approximately 1.5H to 1.0V (horizontal to vertical). The slope height at the greatest point was visually estimated to be approximately 13 feet. The native soil below the fill slope gently to moderately sloped to the north and west at approximately 2.5H to 1.0V.

CP at 54.

Jonathan and Jodi Clausen hired J. Robert Gordon, an engineer with GeoEngineers, to perform a forensic evaluation and geotechnical investigation for the sport court. Gordon's extensive report concluded:

It is our understanding that Stoltz and RDC [Diamond] were to slope the asphalt surface to the west. However, either the slope was incorrectly graded so that it sloped to the north, or the increasing depth of the fill soils to the north resulted in settlement of the fill soils such that stormwater flow off the pavement flows to the north. It also concentrated near the basketball post which created an erosion channel in the crushed surfacing, undermined the sport court, and washed out a deep channel in the fill soils. The SCC, [Spokane County Code], [International Building Code] IBC and standard of care for earthwork practices require that adequate erosion and sedimentation practices/BMPs be applied for all land disturbance activities. Clearly Stoltz and RDC did not perform adequate grading, nor were adequate drainage provisions incorporated into the project considering the depth of fill soils and risk of saturation/instability of these slopes. The Clausens installed a strip drain along the northern edge of the asphalt sport court to attempt to catch most of the stormwater.
. . . .
The sport court was clearly not constructed in accordance with the SCC, IBC, nor in accordance with standard of care within normal earthwork practices to provide adequate performance. Furthermore, the sport court is at risk of additional damage including additional cracking, erosion, and potential slope failure because of the inadequately compacted fill soils.

CP at 149-150.

## PROCEDURE

Diamond Asphalt Paving filed this lawsuit against Jonathan and Jodi Clausen to procure a judgment for amounts owed under the construction contract and to foreclose on the property lien if the Clausens did not pay the judgment. In their answer to the complaint, the Clausens asserted a counterclaim for breach of contract and breach of the implied duty of good faith.

Diamond Asphalt Paving filed a motion for summary judgment. Diamond argued it did not breach the contract as the Clausens claimed. In a declaration, Benjamin Vance opined that Diamond performed its work in a workmanlike manner. Vance sought to impose the blame on Stolz, the first contractor. He declared:

> 6. The basis for the sport court's failure was that the undocumented fill in the first 3' comprised of material insufficient to support asphalt, that the fill supporting the sport court was insufficiently compacted down to 6' and 13' between the two bore holes, and that generally, the asphalt would not have failed had the other components been properly constructed.
> 7. Attached hereto as Exhibit "B" is a publication titled "Courts and Recreational Surfaces Construction and Maintenance Manual" wherein the proper sport court depth is set forth. The defendants' [Jonathan and Jodi Clausen's] contractor for the fill [Stolz] did not meet the requirements.

CP at 35. Vance failed to recognize in his declaration that Diamond assumed some of the responsibilities of Stolz.

8

In opposition to the summary judgment motion, Jonathan and Jodi Clausen argued that Diamond performed defective work and breached the contract when violating the Spokane County Building Code, the International Building Code, industry customs, and the standard of care. According to the Clausens, Diamond also directly breached some of the contract's written terms. First, Diamond failed to properly prepare the subgrade and surface for paving. Second, Diamond relatedly failed to properly grade the site and compact the fill. The poor compaction caused and will continue to cause uneven settlement across the sport court. The poor compaction caused and will continue to cause cracking of the surface and valleys in the surface where water pools. Third, Diamond did not install proper drainage and erosion control. Diamond left the north side and the northern portion of the west side of the court with steep slopes down to the original site grades. Fourth, Diamond placed improper fill material on the site. In their brief opposing the summary judgment motion, the Clausens summarized their complaints:

> a. Quantity of material used;
> b. Price it charged the Clausens;
> c. Whether the "fill" material it used was proper for the project;
> d. Whether the subgrade and surface were properly prepared, including compaction of the "fill" material;
> e. Whether it properly prepared the Court's drainage; and
> f. Whether it properly prepared the Court's erosion control.

CP at 279.

9

The superior court granted Diamond's motion for summary judgment. The superior court concluded that Jonathan and Jodi Clausen's counterclaims for breach of contract, based on violation of city and international codes, did not constitute a breach of contract in part because the scope of work in the construction contract excluded permits, testing, and inspections. The court further resolved that the Clausens had failed to identify violations of the contract apart from negligence.

LAW AND ANALYSIS

Jonathan and Jodi Clausen appeal the superior court's award of judgment to Diamond Asphalt Paving and the dismissal of their counterclaim. In a related challenge, the Clausens assign error to the superior court's grant of reasonable attorney fees and costs to Diamond. In addition to arguing against the merits of the Clausens' appeal, Diamond contends that the Clausens did not assert before the superior court some of the arguments they now assert on appeal.

Breach of Contract

We recite the obligatory principles of summary judgment. This court reviews a trial court's summary judgment ruling de novo. *Watkins v. ESA Mgmt., LLC*, 30 Wn. App. 2d 916, 923, 547 P.3d 271 (2024). In doing so, this court views the facts and reasonable inferences in the light most favorable to the nonmoving party. *Ramey v. Knorr*, 130 Wn. App. 672, 685, 124 P.3d 314 (2005). Summary judgment is appropriate

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). A material fact effects in whole or in part the outcome of the litigation. *Atherton Condominium Apartment-Owners Association Board of Directors v. Blume Development Company.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

*Issue 1: Did Jonathan and Jodi Clausen argue, before the superior court, that Diamond Asphalt Paving committed the three errors charged to it on appeal?*

*Answer 1: Yes.*

On appeal, Jonathan and Jodi Clausen contend they created questions of fact as to whether Diamond Asphalt Paving breached the construction contract in three ways. Diamond failed to lay four inches of compacted base rock. Diamond applied rock that had not been sufficiently fractured and was mixed with clay, sand, and round gravel. Diamond did not adequately slope the court. According to the Clausens, these three defects led to the lack of drainage and caused the court to collapse. But before analyzing the evidence, we must determine whether the Clausens identified these three errors before the superior court.

Diamond insists that Jonathan and Jodi Clausen never forwarded the three purported errors before the superior court when arguing their breach of contract

11

counterclaim. In so arguing, Diamond claims that the Clausens for the first time on appeal base a breach of contract action on an e-mail outlining some extra rock work Diamond performed on the surface before paving. Diamond further insists that the Clausens, for the first time on appeal, allege a failure of a contractual obligation to lay 4" of compacted base rock. Finally, Diamond asserts that, for the first time on appeal, the Clausens argue Diamond bore a contractual obligation to correct and create the drainage required. We will determine later whether the Clausens hold a valid cause of action for breach of contract based on these various allegations. For now, we scan the trial record to discern whether the Clausens presented these allegations to the superior court.

In their summary judgment brief, Jonathan and Jodi Clausen outlined the deficiencies in the sport court to include, (1) failure to properly prepare the subgrade and surface for paving, (2) a related failure to properly grade the site and compact the fill, (3) placement of improper fill material on the site, (4) failure to install proper drainage and erosion control, leaving the north side and the northern portion of the west side of the court with steep slopes down to the original site grades. Thus, the Clausens, contrary to Diamond's assertion, specifically complained about Diamond's failure to install the needed drainage. The Clausens expressly complained that Diamond failed to lay the amount of rock promised.

The Clausens did not expressly argue that Diamond failed to properly engineer the site. Nevertheless, we see no distinction in a failure in engineering from a failure to properly prepare the subgrade and surface, failure to compact the fill, placement of improper fill, or placement of an inadequate drainage system. Any failure to properly engineer likely contributed to the inadequate fill, preparation of subgrade, and deficiencies in the drainage system.

*Issue 2: Do Jonathan and Jodi Clausen submit evidence sufficient to create a genuine issue of material fact as to whether Diamond Asphalt Paving breached the construction contract?*

*Answer 2: Yes.*

When adjudging whether some facts establish a breach of contract, we must first determine the terms of the contract, which, in turn, requires us to discern what, if any, writings became part of the contract. Diamond Asphalt Paving impliedly agrees that its June 23, 2021, bid became part of the parties' agreement. Kim Long, authorized agent of Diamond, and Jonathan Clausen both signed the bid. The bid outlined the scope of the work to be performed by Diamond. It also stated the price the Clausens would pay for the work.

Diamond deems the provisions of the June 23 bid to solely delineate the contract between the parties. It chooses to ignore the August 18, 2021, letter from Kim Long to

13

Jonathan Clausen. A contract need not be set in stone, but may be fluid. The June 23, 2021, bid proposal excluded engineering from the scope of work by Diamond. But the August 18, 2021, letter changed the scope of work. Diamond's Kim Long wrote that Diamond used its "grading expertise" to determine the most cost-effective way to correct the existing drainage. CP at 126. Long added that Diamond "engineered the site" in order to create the desired drainage. CP at 126. According to Long, Diamond brought to the site the necessary equipment, material, and labor for the job. As consideration, the Clausens agreed to pay a higher price for this additional work.

We conclude that both the June 23 bid and the August 18 letter comprise the contract between Diamond Asphalt Paving and Jonathan and Jodi Clausen, and, if provisions of the contract conflict, the language in the later rendition of the bargain controls. At least a question of fact arises as to whether the August 18 letter modified the terms of the June bid. A document can be a contract without calling itself a contract. *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill.2d 281, 152 Ill. Dec. 308, 565 N.E.2d 990, 993-94 (1990). The parties may waive or modify any contract terms. *Shepler Construction, Inc. v. Leonard*, 175 Wn. App. 239, 246, 306 P.3d 988 (2013).

While the August 18 letter supports a finding that Diamond Asphalt Paving assumed the obligation of engineering, other language in the letter supports a conclusion that Diamond assumed the responsibility for correcting errors in the grading, drainage,

and subgrade previously performed by Stolz. Diamond's project superintendent claimed that Stolz incorrectly prepared the subgrade. Diamond stated it used its grading experience to determine the best way to correct existing poor drainage. Diamond wrote that it had engineered the site. Diamond brought the "necessary" equipment, labor and materials to perform the work. CP at 126. The letter does not suggest that any provisions in the June bid would supersede the promises made in the August 18 letter. In turn, the Clausens agreed to pay Diamond for this additional engineering and work.

In the August 18 letter, Diamond represented itself as an expert in grading and the Clausens relied on this expertise when agreeing to pay for the additional work. Construction has become highly scientific and complex. *Davis v. Baugh Industrial Contractors, Inc.*, 159 Wn.2d 413, 419, 150 P.3d 545 (2007). Landowners increasingly hire contractors for their expertise because a nonexpert landowner lacks the capability of recognizing substandard performance. *Davis v. Baugh Industrial Contractors, Inc.*, 159 Wn.2d 413, 419 (2007).

We now proceed to assess whether Jonathan and Jodi Clausen provide facts to establish a breach of contract found in both the June bid and the August letter. In its June 23, 2021, bid proposal, Diamond Asphalt Paving promised four inches of compacted base rock. Diamond's own expert observed inadequate base rock below the asphalt. Another expert found only ½ inch to 1½ inches of base rock during a subsurface exploration.

15

Diamond did not sufficiently fracture the rock and instead mixed the rock with clay, sand, and rounded gravel. According to the expert, the project needed a sufficient quantity and an adequate quality of base rock to support the flexible asphalt surface and to provide adequate drainage.

In the June 23 bid signed by both Diamond and Jonathan Clausen, Diamond agreed that "all material is guaranteed to be as specified." CP at 113. Some facts show that the base rock did not satisfy the guarantee or warranty. As already stated, the amount of base rock laid conflicted with the contract specifications. According to Diamond's own expert, Benjamin Vance, the failure to comply with specifications for the amount of base rock caused rutting failure of the sports court.

In his August 18 letter to Jonathan Clausen, Kim Long, Diamond Asphalt Paving's agent, represented that Diamond's suggested additional work would "correct the existing drainage" and "create the desired drainage that you wanted." CP at 126. The June 23 bid also afforded a "drainage warranty" with a minimum 2 percent grade. CP at 53. A reasonable finder of fact could conclude that Diamond promised or warrantied its work would provide the drainage needed for the sport court. A reasonable trier of fact could conclude that Diamond agreed to correct the work performed by Stoltz. Both experts criticized the sloping of the court. Benjamin Vance, Diamond's expert, wrote that "the asphaltic pavement for the court appeared to be gently sloping to the north" and the

"native soil below the fill slope gently to moderately sloped to the north and west."
CP at 54.

Diamond continues to insist that Jonathan and Jodi Clausen fail to identify what contract term or terms Diamond purportedly violated. We have already identified those terms.

Diamond argues that Jonathan and Jodi Clausen only contend that Diamond's work did not meet code specifications and the Clausens cannot recover for such a breach because the June bid excluded from the scope of work permits, fees, bonds, testing, engineering, and inspections. Yet none of the bid's list of exclusions address compliance with codes or any standard of care. To the contrary, the June bid required Diamond to perform its work in a "substantial workmanlike manner according to . . . standard practices." CP at 208. Experts generally rely on code provisions to determine if a contractor violated standard practices. Robert Gordon declared that "the sport court was clearly not constructed in accordance with the SCC, IBC, nor in accordance with [the] standard of care within normal earthwork practices to provide adequate performance." CP at 150.

To prevail on a breach of contract claim, the claimant must establish (1) that the contract imposed a duty, (2) the duty was breached, and (3) the damages suffered by the claimant were proximately caused by the breach. *Northwest Independent Forest*

17

*Manufacturers v. Department of Labor & Industries*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995); *P.E.L. v. Premera Blue Cross*, 2 Wn.3d 460, 481, 540 P.3d 105 (2023). Jonathan and Jodi Clausen have supplied the court with ample evidence to raise a question of fact as to each of these three elements.

Diamond Asphalt Paving argues that Jonathan and Jodi Clausen seek recovery for negligence which claim is barred by Washington's independent duty doctrine. The doctrine permits recovery, by one party to a contract, in tort if an injury is traceable also to a breach of a tort law duty of care arising independently of the contract. *Jackowski v. Borchelt*, 174 Wn.2d 720, 278 P.3d 1100 (2012). The doctrine precludes recovery in tort, not in contract. Diamond cites no authority that precludes a party to a contract from recovering in contract, even if the other party's breach of contract also constitutes a tort.

Diamond Asphalt Paving argues that the flooding and erosion resulted from the lack of density of soil many feet below grade and that it is not responsible for this problem. Diamond ignores the experts' opinions that other causes contributed to the deterioration of the sport court. Diamond also overlooks that a question of fact exists as to whether it agreed to correct errors made by Stolz.

Jonathan and Jodi Clausen write that the trial court acknowledged a question of fact existed as to whether Diamond's work contributed or caused the sport court to fail. The couple complained that the court did not enter a finding or a conclusion about this

factual question. Because we review orders on summary judgment de novo, findings of fact and conclusions of law are superfluous. *West v. Walla Walla City Council*, 34 Wn. App. 2d 195, 202 n.2, 567 P.3d 634 (2025). A trial court may only enter findings of fact when ruling on a motion for summary judgment under the limited circumstances detailed in CR 56(d). *Haley v. Amazon.com Services, LLC*, 25 Wn. App. 2d 207, 217, 522 P.3d 80 (2022).

CR 56(d) declares:

> Case Not Fully Adjudicated on Motion. If on motion under the rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action, the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

(Boldface omitted.) Jonathan and Jodi Clausen have not cited this court rule. The rule allows the trial court to place, in an order, facts that appear without controversy, not facts in controversy. We agree with the Clausens, however, that a genuine question of fact exists as to whether Diamond Asphalt Paving's construction services caused the deterioration of the sport court.

Attorney Fees

*Issue 3: Whether the superior court erred in awarding reasonable attorney fees and costs to Diamond?*

*Answer 3: Yes.*

The Clausens argue that the trial court erred in awarding attorney fees in Diamond's favor because the record contains facts, opinions, and evidence that create genuine issues of material fact precluding summary judgment. We agree.

The superior court granted Diamond Asphalt Paving an award of reasonable attorney fees and costs pursuant to a construction lien statute, RCW 60.04.181(3). The statute reads, in part:

> The court may allow the prevailing party in the action, whether plaintiff or defendant, as part of the costs of the action, the moneys paid for recording the claim of lien, costs of title report, bond costs, and attorneys' fees and necessary expenses incurred by the attorney in the superior court, court of appeals, supreme court, or arbitration, as the court or arbitrator deems reasonable.

Because we reverse the judgment in favor of Diamond, it is no longer the prevailing party.

Jonathan and Jodi Clausen request an award of reasonable attorney fees and costs on appeal pursuant to RCW 60.04.181(3). Although the Clausens win this appeal, we

remand for further proceedings. The superior court will need to decide after trial who is the prevailing party in this action.

## CONCLUSIONS

We reverse the superior court's summary judgment in favor of Diamond Asphalt Paving, including the award of reasonable attorney fees and costs. We remand for further proceedings consistent with this opinion.

A majority of the panel have determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_Fearing, J._ , J.
Fearing, J.

WE CONCUR:

_____
Murphy, J.

_____
Staab, A.C.J.